JOHN KOELEG AND MARY KOELEG v. WILLIAM H. PHELPS ET AL.

*Landlord and tenant—Lease—Breach of covenant.*

The lease in this case is construed as only giving the lessor the right of re-entry, and possession of the stock and farming tools and utensils rented with the farm, in case the lessee failed to work the farm in a good and workman-like manner, and not to authorize the seizure of the crops for such breach.

Error to Alpena. (Simpson, J., presiding.) Argued April 23, 1890. Decided May 2, 1890.

Replevin. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Shields & McNamara,* for appellants.

*Turnbull & Dafoe,* for plaintiffs.

MORSE, J. This is an action of replevin. The plaintiffs, April 30, 1887, rented of the defendant Phelps a farm, situated in the township of Maple Ridge, county of Alpena, for the term of three years from May 1, 1887. The contract was in writing, and of considerable length. Phelps was to furnish one-half of the seed, and the farming tools and utensils then on the place, and the use of

a team during the summer season. The plaintiffs were to do the work in a good and workman-like manner at all times, and give time and attention thereto, and furnish one-half the seed. The crops were to be divided equally, at the farm, at the end of each season. The agreement also provided that,—

"In case said Phelps furnishes said second party in provisions, seed, etc., said Phelps is to have a lien in the nature and to the effect of a chattel mortgage, as security therefor, upon the crops and stock."

He was also to have a lien as of a chattel mortgage upon all the produce, whether harvested or not, to secure the payment of rent and taxes.

At the close of the first season, and about October 17, 1887, Phelps took possession of the farm, served a notice to quit upon plaintiffs, ordered them to leave the place, and left a man on the premises to prevent plaintiffs from taking away any of the crops, which were harvested, and consisted of oats, wheat, and hay. The defendant Phelps took possession of the farm, and excluded the plaintiffs from the crops, upon two grounds:

1. That they were indebted to him largely for advances made by him, and for which he had a lien upon the crops.

2. That the plaintiffs had not conducted the farm in a good and workman-like manner.

Phelps advertised the property for sale under his alleged lien. On the day of the sale, and before it was made, Mr. Dafoe, on behalf of the plaintiffs, tendered Phelps the sum of $125, in full of his said lien, which Phelps refused. Thereupon the plaintiffs replevied the property, but, under the writ, obtained possession of less than their half of each of the crops harvested by them.

The following special questions were submitted to the jury:

"1. Did the plaintiffs conduct the farm in a good and workman-like manner?"

The jury answered: "Cannot decide from the evidence given.

"2. At the time Phelps took possession, did the plaintiffs owe him more than $125?

"*A.* No."

The general verdict was for the plaintiffs. The defendant Phelps in due time moved for judgment upon the answer of the jury to the first special question. This was denied, and judgment entered for the plaintiffs in accordance with the general verdict.

It is claimed by defendants' counsel that if the plaintiffs had not conducted the farm in a good and workman-like manner Phelps was authorized not only to take possession or the premises, but also of the property upon it. This was the view of the circuit judge, and he so instructed the jury. Defendants' counsel contend that as the right to the property in this action depended upon the right of possession at the time the writ was brought, and the defendant Phelps having taken such possession, the burden of proof was upon the plaintiffs to show that they had conducted the farm in a good and workman-like manner. We think the circuit judge was in error in ruling that Phelps was authorized, under the contract, to take possession of the crops if the plaintiffs had not managed the farm in a good and workman-like manner. The lease cannot be so construed. Under the contract, Phelps was to furnish the following property: 30 sheep, 8 chickens, 4 turkeys, 1 cow, 4 head of young cattle, 1 sow, and 4 pigs. This stock was to be kept and cared for by the plaintiffs, and returned to Phelps at the end of the three years, together with one-half of the increase. The contract provided as follows:

"And should the said parties of the second part fail in any of the foregoing promises, conditions, and obligations,

contained in this agreement, on their part to be fulfilled, kept, and performed, then this lease will become null and void; and the said party of the first part, his heirs, executors, administrators, and assigns, may peaceably re-enter and take possession of the premises and property hereby rented, without any formal proceedings, either at law or in equity; and the said parties of the second part hereby agree to pay to the said party of the first part, his heirs, executors, administrators, or assigns, all damages or loss which he, they, or them may suffer by reason of any failure on the part of the parties of the second part faithfully to carry out, observe, and perform all the terms, covenants, and conditions hereinbefore set forth."

In case the plaintiffs did not work the farm in a good and workman-like manner, Phelps was authorized to take possession of the premises "and property hereby rented." This property must be considered to be the farming tools and utensils, and the stock put on the place by Phelps, not the share of the crops put in and harvested by plaintiffs. There is no authority given in the instrument to Phelps to have possession of or hold the plaintiffs' share of the crops for any purpose save the payment of his lien, or for the non-payment of rent or taxes. The jury found that his lien was tendered him; and he made no claim on the trial for the non-payment of rent or taxes. As the writ was issued only for crops—hay, oats, and wheat— raised upon the premises the first year, the special finding of the jury as to the farm management was entirely immaterial. The other defendants were persons who purchased the property at Phelp's sale, and derived their title from and held under him.

We find no error in the proceedings upon the trial, and the judgment will be affirmed, with costs.

The other Justices concurred.