STEPHEN H. HOUGH v. EDSON C. BROWN.

*Landlord and tenant—Abandonment of premises—Lease—Forfeiture—Implied covenants.*

1. The lessee of a farm upon shares, owing to his inability to put in spring crops by reason of the season's being wet, rented an hotel near the farm, to which he removed his family, but left in the house on the farm, which he locked up, some of his furniture, and upon the farm some tools and poultry. After such removal he did some work upon the farm, repairing fences and planting corn. When leaving the farm his intention was to retain possession thereof, and, before the expiration of his lease, return and cut some hay growing thereon. And it is held that the lessee cannot be said to have relinquished to the landlord the right to the possession of the farm or his right to the hay, or to have surrendered his lease.

2. A tenant leased a farm for one year at a cash rental, the lease being in writing. The tenant continued to occupy the farm after the expiration of the year, under, as he claimed, an independent verbal lease, while the landlord claimed that the original lease was verbally renewed upon the same terms and

conditions, except that he was to receive as rent one-third of the crops. Both parties agreed that, at the time of such renewal, nothing was said as to how the farm should be operated. In addition to the stipulation for the payment of rent, the written lease provided that the lessee should pay the road tax, keep the buildings and fences in good repair, should not sublet, and at the expiration of the term should surrender possession to the lessor. Following these agreements, was a general provision that, should the tenant "fail in any of the foregoing promises," the lease should become null and void, and the lessor might peaceably re-enter and take possession without formal proceedings. And it is held that, if it be conceded that the reletting was subject to the terms and conditions of the original lease, the general provision relating to re-entry cannot be held to apply to an implied covenant that the tenant should properly farm the leased premises.

Error to Gratiot. (Daboll, J.) Argued January 30, 1895. Decided February 12, 1895.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*John T. Mathews,* for appellant.

*George P. Stone* and *Kelly S. Searl,* for plaintiff.

McGRATH, C. J. In April, 1889, plaintiff was the owner of 40 acres of land, and by written instrument leased the same to Erastus Hewitt for one year, at a given rental. In addition to the stipulation for the payment of the rent, the lease provided that the lessee should pay the road tax, keep the buildings and fences in good repair, should not sublet, and at the expiration of his term should surrender possession. After these provisions there was a general provision that, should the tenant "fail in any of the foregoing promises," the lease should become null and void, and the lessor might peaceably re-enter and take possession of the farm without formal proceedings. It is claimed by plaintiff that the lease was verbally renewed in the spring of each of the years 1890, 1891, 1892, and

1893, upon the same terms and conditions, except that, instead of an annual money rental, he was to receive one-third of the crops. Hewitt insists that an independent parol lease was entered into in the spring of each year, without reference to the terms of the old lease. Both parties agree that, at the time of the renewals, nothing was said as to how the farm should be operated. In the spring of 1893, Hewitt repaired the fences upon the farm, and plowed some of the land, intending to put in crops, but he claims that the land was low, and the season very wet, and consequently he was unable to put in any spring crops, except some corn, which was almost wholly drowned out; that in view of his inability to put in such crops, and thereby to provide for his family, he rented an hotel about half a mile distant, and removed his family thither, intending to do what he could with the farm during that season. He left some articles of furniture in the house, and locked it up, and left some farm implements and some poultry upon the farm, and, after he had moved his family to the hotel, he did some work upon the farm, repairing fences and planting corn. On the 12th of July, plaintiff, without the knowledge of Hewitt, engaged certain parties to cut and cure about eight acres of hay which was upon the farm, they to receive one-third of the hay, and plaintiff to have two-thirds. The hay was cut, and two-thirds of it stacked upon the farm. As soon as Hewitt learned of the cutting, he forbade it, but without effect. The defendant, under a chattel mortgage given to him by Hewitt,[1] took the hay from the stacks, and plaintiff brought replevin, insisting that, by reason of Hewitt's failure to properly farm the premises, the lessor had the right to re-enter, and also that there had been an abandonment of the premises by the lessee.

---

[1] The mortgage was given July 17, 1893.

Counsel for defendant requested the court to instruct the jury—

" That, in order for the jury to find an abandonment of the premises, they must first find that he had voluntarily relinquished his claim or privilege to work and operate the plaintiff's farm during the period for which he had rented it; that the fact or right of abandonment was with Mr. Hewitt alone. Mr. Hough had no right to declare an abandonment so long as the tenant was holding possession of the farm, and intending to use it, so that if you find that by locking up the house and holding the key, and looking after and having general supervision of the farm, an abandonment cannot be found."

The court refused to give that instruction, but did instruct the jury that—

"If Mr. Hewitt stopped working the place, and refused to go on with this contract and pay rent in that way,— has abandoned the farm,—that would authorize Mr. Hough to re-enter and take possession, and the lease would be forfeited, and Mr. Hough would become the owner of the grass. If you find that to be the state of affairs, then Mr. Hough is entitled to recover, because such abandonment as that, and refusal to go on with the contract as I have named, would be a forfeiture; and, if it was forfeited and abandoned, then the landlord, on re-entering, becomes entitled to the crops. If, on the other hand, Mr. Hewitt had not abandoned the farm, but was still going on with his contract and in possession, then this action cannot be maintained by Hough, because, as long as a tenant has not abandoned his contract and the premises, any one buying his crops, or, as in this case, taking a chattel mortgage, as is claimed, would get a good title, and can enforce it. The mere fact that the tenant does poor work and poor farming does not give the landlord the right to declare an abandonment, against the wish of the tenant, who is still in possession, and refusing the landlord's demand of possession under a lease, as claimed in this case. So, as I said, gentlemen, the case turns very largely upon how you shall find that question of abandonment; in fact, that is the issue in this case, and it turns entirely upon that."

The court erred in refusing to give the instruction

requested and in the instruction given. An "abandon-ment" is defined as a relinquishment or surrender of rights or property by one person to another; a giving up; a total desertion. It includes both the intention to abandon and the external act by which the intention is carried into effect. 1 Amer. & Eng. Enc. Law, 1. The plaintiff tes-tifies that on June 23, which was 11 days after Hewitt had moved his family to the hotel, he had a conversation with Hewitt at the farm.

"I had a talk with him in regard to the corn, and he said he was going to cultivate it. I spoke to him, that his hens were eating up the corn. He was then living at the hotel. I made no objection to his living at the hotel. I was next there on June 29. I had then determined to cancel the lease, but I did not so state to him. I asked him for the key to the house, stating that I wanted to look through it. My real object was to take possession, but I did not get the key."

It was conceded upon the trial by counsel for plaintiff that Hewitt "intended when he left the things in the house, and all the time, to go back there and cut the hay." Counsel was then asked: "You will admit that he intended to keep possession of the farm? *A.* For the pur-pose of going back and cutting this hay."

Under this testimony and admission, it cannot be said that Hewitt's removal of his family to the hotel was a relinquishment to plaintiff of the right of possession or of the crops. The neglect of the crops, if any, may be evi-dence of a breach of an implied covenant to care for them; but a party intending and claiming the right to harvest the crops upon the farm cannot be said to have relinquished the possession of the farm or his right to the crops or to have surrendered his lease. It was held in *Doty v. Gillett,* 43 Mich. 203, that a surrender will not be presumed from mere acts of non-user. It requires some-

thing more than a mere neglect of a farm to constitute a surrender of it to the landlord.

If it be conceded that the relettings were subject to the terms and conditions of the original lease, the provision relating to re-entry cannot be held to apply to implied covenants. Suppose that the new lease had been reduced to writing, and the agreement to turn over to the lessor one-third of the crops had been substituted for the agreement to pay a specific annual rental, and then followed the clause providing that, should the tenant "fail in any of the foregoing promises," etc., can it be said that the right to declare a forfeiture followed a failure to perform a promise not expressed, but implied? We think not. The implied agreement must be regarded as a naked covenant, and the right of re-entry must be held to apply in case of default respecting express promises. Forfeiture clauses in a lease are not favored, and their effect will be restricted as far as possible. *Miller v. Havens,* 51 Mich. 482.

In *Walsh v. Martin,* 69 Mich. 29, it was held that the indorsement upon the written lease, which expressly referred to the "within lease," was in itself an independent agreement, and that the forfeiture clause had no application.

In *Koeleg v. Phelps,* 80 Mich. 466, the lease contained a covenant that the lessee should work the farm in a workmanlike manner, and then followed a provision for re-entry in case of default, precisely like that contained in the written lease in the present case, and the Court held that such provision did not authorize the lessor to take the lessee's share of the crops.

The only question for the jury in the case, the defendant having waived a return, was the value of the property.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.