## ROYAL ELKHORN COAL CO. v. CHESA-PEAKE & OHIO RY. CO.

### No. 232.

United States District Court
E. D. Kentucky, Pikeville Division.
July 17, 1953.

342

Baird & Hays, Pikeville, Ky., for plaintiff.

Browning & Gray, Ashland, Ky., Combs & Combs, Prestonsburg, Ky., for defendant.

SWINFORD, District Judge.

This is an action in ejectment with a claim for damages for the wrongful occupation and use of a right of way by the defendant company on what is known as a spur track up Fraziers Creek in Floyd County, Kentucky. The property involved is approximately 3300 feet in length and 60 feet wide, except for a distance of 400 or 500 feet in which it is 100 feet in width.

The facts are briefly these: the plaintiff acquired the property in question between the years 1918 and 1924 from various parties by deeds of conveyance and for a valuable consideration. The plaintiff expended several thousands of dollars for grading and building a track over this right of way from the main line of the defendant railway company to the plaintiff's mineral holdings up Fraziers Creek, a tributary to Left Beaver Creek in Floyd County, Kentucky.

The plaintiff, its successors and lessees used this track intermittently for the purpose of transporting the coal from its mining properties until 1936. At that time the remote lessee, the Autocrat Coal Company, stopped the mining of coal and dismantled and disposed of its equipment which included the rails and ties on the spur track. It is established by the proof that the reason for the cessation of operations was economic and not the fact that the coal properties had been exhausted of the merchantable and minable coal.

The right of way grew up in bushes and weeds; there were buildings and houses, either wholly or partially, built upon it; fences were placed across it and it gave the general appearance of being entirely abandoned by the owner.

In 1945 the defendant company, in order to make accessible to market the coal from various coal companies which was being mined up Fraziers Creek, went upon this right of way and took deeds and conveyances from the persons who were living upon or adjacent to the property and who claimed some ownership or asserted some right to the property. For these conveyances the defendant company paid a valuable consideration. It thereafter built a spur track at a cost of approximately $35,000 which was a part of a larger expenditure of $171,000. The latter figure covered the entire track laying and development into the coal fields of this immediate section.

In this proceeding the plaintiff reasserts its claim to title to this property. It files with its pleadings and offers in evidence the deeds and conveyances from the various persons who in 1918 to 1924 actually had or claimed to have title to the property. It asks that it be placed in possession and that the defendant be ejected as a trespasser without right or color of title.

The defendant in its answer alleges title in itself by reason of warranty deeds of July 5, 1945 from Douglas Hayes and Lizzie Hayes, his wife; Sam Martin and Nora Martin; Myrtle Turner and Joe Turner; Paul Horn and Vela Mae Horn; Ed Allen and Mallie Allen; and by deed of June 28, 1945 from J. F. Howell and Beuna Howell et al.; and on October 1, 1945 from Florence Sizemore Martin et al., for all of which it paid a valuable consideration.

It is contended further as a defense that Douglas Hayes, John Hall and Glenn Spradlin are now the owners of all but five shares in the plaintiff company and that all of these parties are residents of Floyd County, Kentucky, and live either adjacent to or in the general locality of the right of way in question; that they were present and had full knowledge that the defendant company was building the track over this right of way and that they made no objection to the building of the track; that, in fact, one of them, Douglas Hayes, assisted in acquiring the right of way and that the plaintiff is therefore now estopped from claiming title.

The defendant further contends as an absolute defense that the right of way was abandoned by the plaintiff in 1936, nine years before the defendant entered upon the right of way and that the subsequent conduct of the plaintiff, its stockholders and officers is a bar to the relief sought.

As a further defense the defendant alleges and offers proof to the effect that the land in question is of little value as a right of way to the plaintiff but that it is an absolute necessity for the public and that as a public service corporation it should not be evicted or ejected from all or any part of the land in the record described.

■ I will consider these defenses in the order named. The first question which suggests itself in considering the question of title to real estate, which is reflected by the records of the county court in which the land lies, is: Why did the defendant ignore the title of the plaintiff? The defendant went to considerable trouble and evidently expended some money in acquiring title from people who did not have the title, but made no effort to contact or negotiate with the Royal Elkhorn Coal Company. It should be pointed out that the Royal Elkhorn Coal Company was at that time (1945) owned by non-residents of the State of Kentucky. All of these stockholders and officers lived in Ohio and, according to the testimony of Mr. C. E. Tibbals, in the northern part of Ohio, which was hundreds of miles from the property in question. If courts are to lightly consider record titles to real estate and favor those who ignore such records, all non-resident owners will be in danger of losing their titles and not even knowing of it for many years. It is a well established principle of law, and one which courts should rarely depart from, that the ownership of real estate by a duly recorded deed or will is one of the most jealously guarded securities a person can have and he may come and go at will with no fear that his title will be interfered with and with an understanding that he does not have to periodically appear and assert and reassert such vested right.

The fact is that this title was in the plaintiff at all times and if deeds were made to the defendant company by those who did not have the title, then the defendant company acquired nothing by the deeds.

■ It is well established that in actions of this kind the plaintiff must stand on the strength of its title and not on the weakness of the title of those against whom it claims. The defendant contends that the plaintiff has wholly failed in this; consequently, it is necessary that we consider the source of title on which the plaintiff relies.

A study and examination of the maps and exhibits in the light of the record of evidence reveals that the boundary claimed by the plaintiff was acquired by it from separate sources. This may be identified as the Sizemore Heirs tract, the Elkhorn Coal Corporation or Douglas Hayes tract and the Day-Hall tract.

The Sizemore Heirs tract was acquired by deed of January 4, 1918 to the plaintiff, Royal Elkhorn Coal Company, and identified in the record as Plaintiff's Exhibit 4.

The Elkhorn Coal Corporation or Douglas Hayes tract was acquired by deed of conveyance of January 1, 1924 from the Elkhorn Coal Corporation and identified in the record as Plaintiff's Exhibit 3.

The Day-Hall tract or parcel was acquired by deed of conveyance of April 23, 1917 from John Hall et al. to David Armstrong and W. W. Tibbals and is identified in the record as Plaintiff's Exhibit 5. This tract was later acquired by the Royal Elkhorn Coal Company by mesne conveyances when it obtained its corporate charter in 1918.

Without burdening the record with further details the Court is of the opinion that the plaintiff has, through these deeds and conveyances, established in a satisfactory way its source of title and that it has not lost that title by any transfers or conveyances or by any overt act by which it intentionally divested itself of title.

In this connection it is proper to discuss the deed to W. W. Tibbals of January 16, 1926. The defendant contends that by this instrument the Royal Elkhorn Coal Company conveyed its railroad and right of

way to Tibbals. A reading of the deed indicates to the contrary. It was a sale and conveyance of all of its stock, equipment, rails, track, etc., but it expressly excepted the "cash in bank, book accounts and *the premises herein leased*". I think it clear from this instrument that the parties had no intention of conveying or acquiring the right of way in suit.

It is further argued that by the deed of January 21, 1924 the plaintiff conveyed to the Elkhorn Coal Corporation the right to construct a railroad and to use this spur line for a right of way and that by reason of a quitclaim deed from the Elkhorn Coal Corporation of date October 23, 1951 to the Chesapeake & Ohio Railway Company that the defendant thereby acquired a title to the right of way over which its track is built. The defendant cites and relies upon the case of Cornett v. Louisville & Nashville R. Co., 298 Ky. 95, 182 S.W.2d 230. A reading of that case does not indicate to me that it is an authority for the position taken by the defendant. The language in the opinion was to the effect that there was conveyed a right of way which might be transferred to any person or corporation with or without the authority of either of the parties. The quitclaim deed contains no such implication and in fact could not since it purports to do nothing more than to give to the defendant the knowledge that the Elkhorn Coal Corporation makes no claim against it.

With reference to the question of estoppel it should be pointed out that Spradlin, Hall and Hayes did not acquire the stock in the Royal Elkhorn Coal Company until 1949 which was several years after the railway company had entered upon the land and built its track. The evidence is not of such a character that the court feels that it could ignore the corporate entity and deal with the stockholders as individuals to the extent that the corporation would be charged with knowledge or the misdoing of one of its stockholders. Very frankly I do not understand the action of the stockholder, Hayes, in accepting a thousand dollars from the railway company which both he and the attorney for the railway company state that they knew he should not have had. The only explanation which might be given to this conduct was that the attorney for the railway company thought he was thereby influencing one who might be of assistance to him in acquiring certain property rights. Hayes, on the other hand, was accepting some ready money for something which he knew he did not own.

The doctrine of estoppel calls for the court sitting as a chancellor to apply an equitable defense in order to prevent a hardship upon one who has or had no legal remedy. In this instance the defendant had a clear legal remedy which it deliberately declined to exercise. Why should the chancellor pass title by estoppel in pais to one who entered upon another's land and took possession in the face of a record title which it ignored. For that reason I do not feel that the defense of estoppel is a valid defense. It is not established that there was such concealment or negligence amounting to fraud in law that the defendant was misled to its injury. Rowe v. Chesapeake Mineral Co., D.C., 61 F.Supp. 773; 19 Am.Jur. § 87, page 743.

In order to establish or sustain its defense of abandonment the defendant must establish that fact by a preponderance of evidence. Where a record title is shown to be in effect, one who ignores that fact and alleges the title to a fee or to an easement has the burden of proving that the owner abandoned his interest in the property.

The plaintiff acquired whatever interest it had in the land by purchase for the express purpose of having a right of way to its mineral lands. This right of way was used by it and its lessees continuously or intermittently from the time of purchase until 1936. It is true that the rails were taken up by one who had purchased the mining stock and equipment and by an express provision of the instrument of transfer. It is not clearly shown, however, that there was any abandonment of the coal lands which were served by this right of way. On the contrary Mr. C. E. Tibbals testifies that he continuously looked after the interests of the company and was em-

ployed for that purpose; that he made arrangements to protect the minerals by sealing the openings and giving to the property reasonable attention. The closing down of a coal mining enterprise in eastern Kentucky is no proof at all that the mineral lands and all appurtenances thereto are abandoned. Such a fact is well known to the defendant here as its officers and agents have an intimate knowledge of the uncertainty of mining in this region. Valuable mines are at times closed for many years due to economic conditions over which the operators have no control. To forfeit rights of coal operators and leaseholders in eastern Kentucky because of a few years of inactivity would create a condition of uncertainty which would be intolerable.

I think the deposition of Charles Ernest Tibbals clearly indicates that as late as 1937 the plaintiff had no intention of abandoning this right of way. Mr. Tibbals was the manager of the Royal Elkhorn Coal Company and was a stockholder from the early 1920's until 1947 when all but five shares of the stock of the company was sold. At the time of the taking of the deposition the defendant objected to the introduction of two letters from C. E. Tibbals to A. J. May, the attorney for the Royal Elkhorn Coal Company, on the ground that the letters were self serving. I am of the opinion that these letters were competent since they bear directly upon the intention of the company and its managing stockholders with reference to whether they had or had not abandoned the right of way.

In the letter of November 13, 1937 it is manifest that it not only had no intention of abandoning the right of way but on the contrary was asserting vigorously all the rights which it had under its title. The letter contains the following pertinent language:

"In my short talk with you while I was in Prestonburg and also in my last letter to you I tried to make it very plain to you that our company has no intention of abandoning our mineral acreage as a mining proposition. In fact our company has in the past few months spent over $500 in sealing up the various openings of this mine so as to preserve it as a coal mine in accordance with the state mining laws.

"Therefore we wish to hold a right of way for a railway switch from our property to the C & O Railway and although the county road has already been built and has been in use for seven or eight years along the side of where our tracks were laid over the Elkhorn Coal Corporation tract, it has been done without our knowledge or consent.

"I might say that the steel on this switch was taken up and junked by the Autocrat Coal Company without any authority from our company and without our knowledge until several months after it had been done."

Further in the letter we find this language:

"Also please see regarding getting possession of the four or five miners houses near the mine which are now being claimed and are rented out by the Keen Martin heirs. We feel that these houses are our property and we are willing to bring suit if necessary to get possession of them."

The defendant cites and relies upon the case of Mammoth Cave National Park Ass'n v. State Highway Commission, 261 Ky. 769, 88 S.W.2d 931, 934. In that case the evidence disclosed that the owner of the easement had not only abandoned the right of way by removing the tracks but that it had attempted to convey the land to others *to be dedicated to other purposes.* The court found that there was ample evidence to justify the finding that there had been an abandonment of the easement.

In that case, however, the court lays down the rules governing cases of this character in the following language:

"Forfeiture of easements like other forfeitures are not favored by courts, and mere nonuse or temporary suspension of use without adverse possession is not alone sufficient to establish abandonment. Morris v. Daniel, 183 Ky. 780, 210 S.W. 668; Malone v. Jones, 211 Ala. 461, 100 So. 831; Fulcher v.

Dierks Lbr. & Coal Co., 164 Ark. 261, 261 S.W. 645; Arlington Realty Co. v. Keller, 105 N.J.Eq. 196, 147 A. 437. While long-continued nonuser or suspension of use are not of themselves conclusive evidence, they are factors to be considered when coupled with other acts evidencing the intention to abandon, in determining whether an easement has been relinquished. Babcock v. Gregg, 55 Mont. 317, 178 P. 284; Knotts v. Summit Park Co., 146 Md. 234, 126 A. 280; 9 R.C.L. 812."

■ I am of the opinion that in the light of the record in the case at bar the court would be going far beyond any evidence or reasonable inference which might be drawn from the evidence in avoiding the duly purchased title of the plaintiff and declaring that title in the defendant railway company. It is inconceivable that the owner of valuable coal lands would abandon a right of way which it owned and which was imperative to development of its holdings. While it is true the C & O Railway Company serves the same purpose I do not feel that courts should for such reasons transfer titles.

Titles to real estate should have the support of fixed principles of law and should not be left to the determination of individual judges or members of the courts. For that reason an acquisition of title by adverse possession has been recognized as a principle of law which was more appropriately legislative than judicial. The statutory period of fifteen years seems a short enough time; the defendant here asks the court to reduce that to nine years.

It seems to me that this case falls squarely within the facts and law of the case of Sandy River Coal Co. v. Champion Bridge Co., 243 Ky. 424, 48 S.W.2d 1062, 1063. The facts in that case are markedly similar to the facts in the case at bar, even to the extent that the steel rails were taken up and removed. The following, quoted from the opinion in that case, seems to me to be controlling:

"The essential elements of abandonment are not established by the evidence. The abandonment of property requires the concurrence of an intention to abandon and actual relinquishment. Webster's New International Dictionary defines the word 'abandon' as follows: 'To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. * * *' Stinnett v. Kinslow, 238 Ky. 812, 38 S.W.2d 920, 922. In the case of Hough v. Brown, 104 Mich. 109, 62 N.W. 143, 144, 'Abandonment' was thus defined: 'The relinquishment or surrender of rights or property by one person to another; a giving up; a total desertion. It includes both the intention to abandon and the external act by which the intention is carried into effect.' Barnett v. Dickinson et al., 93 Md. 258, 48 A. 838; Saxlehner v. Eisner & Mendelson Co., 179 U.S. 30, 21 S.Ct. 7, 45 L.Ed. 60; Shepard v. Alden, 161 Minn. 135, 201 N.W. 537, 202 N.W. 71, 39 A.L.R. 1094. The mere absence from, and nonuser of, property do not prove an intention to abandon it, although conduct of that kind may continue unexplained for such length of time as not to be consistent with any other hypothesis. Farmers' Canal Co. v. Frank, 72 Neb. 136, 100 N.W. 286."

It is my conclusion that the plaintiff has not lost title to this property. The question of the amount of damages which the plaintiff shall recover has not been heard and no evidence is offered on that point by an agreement between the parties and by order of the court. Such question was reserved until the determination of the respective rights of the parties. At the call of the docket on the first day of the next regular term at Pikeville, Kentucky, Monday, October 12, 1953, at 10:00 a. m., this case will be set down for hearing on the question of damages.

No final judgment will be entered on any of the questions until the amount of damages is determined.