365 Mich. 322 (1961)
112 N.W.2d 573
In re PETITION OF STATE HIGHWAY COMMISSIONER.
McCULLAGH
v.
LEONARD REFINERIES, INC.
Docket Nos. 51, 52, Calendar Nos. 48,972, 48,973.
Supreme Court of Michigan.
Decided December 28, 1961.
*325 Joseph W. Planck, for petitioners McCullagh.
Foster, Foster, Campbell & Lindemer (John L. Collins and Edmund E. Shepherd, of counsel), for cross petitioner Leonard Refineries, Inc.
Leo A. Farhat (John Robert Dethmers, of counsel), for cross petitioner American Petroleum Company, Inc.
CARR, J.
Under date of May 3, 1938, Don C. McCullagh and Hazel E. McCullagh, appellees herein, as owners of certain land in the city of Lansing, entered into a lease of the premises to the Roosevelt Oil Company for use as a filling station. The period of such leasing was fixed at 10 years, subject to a provision, however, that it should be automatically renewed for a further period of 10 years, and likewise at the expiration of any renewal period, unless the lessee gave notice to the lessors 90 days prior to the expiration date that it did not intend to exercise the renewal privilege. The amount of monthly rental was fixed at $60. The lease as written contained the following provision:
"It is further provided, that the lessee shall not assign this lease without the written consent of the lessors; however, the lessee may sublease all or any part of the property described or buildings hereafter erected without the consent of the lessors."
The Roosevelt Oil Company continued in possession of the leased property until October 30, 1948, at *326 which time it executed a general conveyance of all of its assets to Roosevelt Oil & Refining Corporation. The assignee assumed possession and paid the rent to the lessors. Following the execution of the assignment, and under date of December 20, 1948, a certificate of consent of stockholders to dissolution of the Roosevelt Oil Company was filed in the office of the secretary of State of the State of Delaware, under the statute law of which the Roosevelt Oil Company had been organized.
In November, 1951, the Roosevelt Oil & Refining Corporation executed a sublease of the premises to appellant American Petroleum Company, Inc., which apparently continued to operate the station through its subsidiary Cavalier Gas & Oil Company. Under the arrangement made the latter corporation sold the products of American Petroleum. It does not appear that such arrangement was reduced to writing. The Roosevelt Oil & Refining Corporation, under date of November 30, 1955, executed to appellant Leonard Refineries, Inc., an assignment of the McCullagh lease. No change in the method of operation of the filling station under the sublease above mentioned was made. Leonard Refineries, Inc., continued the rental payments to the original lessors.
The situation, as above indicated, existed on January 8, 1958, at which time the State highway commissioner served on Mr. and Mrs. McCullagh a "notice of hearing on necessity." Said notice, which was dated December 27, 1957, referred to a project involving the relocation and construction of a portion of US-27, in which it was deemed necessary to take the premises covered by the lease in question. It recited that, pursuant to the statute, the purchase of necessary property interests for the improvement had been undertaken in good faith but that it was impossible to reach agreements or obtain voluntary conveyances of lands deemed essential to the relocation *327 of the highway. The hearing was set for January 24, 1958, a reference being made to the pertinent provision of the statute governing the proceeding. Attached to the notice served on Mr. and Mrs. McCullagh, following the description of the property, was a list of interested parties, containing the names of the appellees, appellant Leonard Refineries, Inc., and Cavalier Gas & Oil Company.
Subsequent to the hearing on necessity and pursuant to the service of the notice thereof, the State highway commissioner, under date of February 11, 1958, made his determination of necessity for the taking of the property involved in the instant proceeding for the relocation and construction of highway US-27. Copy of such determination was attached to a notice thereof, said notice and the determination of necessity being recorded in the office of the register of deeds of Ingham county on February 17, 1958. It may be noted in passing that no question is involved in the present controversy with reference to the regularity of the condemnation proceedings.
After title and right to possession had become vested in the State, counsel for appellees advised Leonard Refineries, Inc., that the owners did not recognize the assignments of the original lease, and that they had never consented thereto. Demand was made for possession of the premises and a tendered rental check was returned. In June following, appellees caused to be served on Leonard Refineries, Inc., a notice to quit and surrender possession of the premises because of an intention to terminate the existing tenancy.
The State highway commissioner having filed a petition in the circuit court of Ingham county for the appointment of commissioners to fix the damages to be awarded to property owners with whom agreements of purchase had not been made, the parties to *328 the instant appeal entered into a stipulation that the amount of compensation to be paid by the State for their aggregate interests should be fixed at $32,000, the division of such amount, if necessary, to be determined by the court upon petition therefor. Apparently the parties were unable to agree and, in accordance with the stipulation and the order of the circuit court of Ingham county approving the settlement, petitions were filed setting forth the claims of the appellees and of the appellants. By agreement of the parties, American Petroleum Company, Inc., was substituted for Cavalier Gas & Oil Company.
On behalf of the owners it was claimed that they were entitled to the full amount of the agreed compensation on the theory that the assignment by the original lessee to Roosevelt Oil & Refining Corporation and the subsequent assignment to Leonard Refineries, Inc., were void insofar as any rights in the premises were concerned, and that the sublease to American Petroleum Company, Inc., was wholly ineffective. The claim of the owners was based on the provision of the lease, above quoted, with reference to the making of an assignment by the lessee without the written consent of the lessors. The claim so advanced by the owners was challenged by the appellants herein, testimony was taken on the hearing before the circuit judge, and an order was entered sustaining the position of the owners and awarding to them the total agreed compensation of $32,000. The other claimants appealed from such order.
The basic question at issue involves the clause of the lease by the owners to Roosevelt Oil Company providing that the lessee should not assign without written consent of the lessors. Emphasis is placed by appellants on the fact that the lease did not provide for forfeiture or for right of re-entry, or other specific form of relief, in the event of such an assignment, or attempted assignment. It is asserted *329 that under numerous decisions of this Court a mere covenant or agreement not to assign, if breached, does not operate to void the lease, nor does it give the lessor the right to do so. It is conceded in the instant case that the owners made no attempt to regain possession of the premises until after the bringing of the condemnation proceeding and the passing of title and right of possession to the State as the result of the determination of necessity on February 11, 1958.
The question here at issue has been repeatedly considered and discussed in prior decisions of this Court. In Wakefield v. Sunday Lake Mining Company, 85 Mich 605, there was involved a lease of mining property which the original lessee had assigned to the defendant in the case. The written instrument expressly provided that in the event of nonpayment of stipulated royalties or rental, the nonpayment of taxes, or the nonperformance of any of the covenants of the lease, the lessors should have the right to reenter and to repossess the property. It was the claim of plaintiffs that the assignee of the lessee had breached the provisions of the agreement. Such was apparently the situation. Commenting thereon this Court, in reversing a decree entered in the circuit court in favor of the plaintiffs, said (pp 620, 621):
"A breach of condition is not denied, but the lease does not provide that in the event of a breach it shall become void. The failure to pay the royalties did not, therefore, ipso facto, work a forfeiture. Dare v. Boylston (SD NY), 6 F 493; White v. Lee (D Mass), 3 F 222 (5 Ban & A 572); Cheney v. Bonnell, 58 Ill 268. In Palmer v. Ford, 70 Ill 369, the statement that `unless the rents were paid he would have to declare a forfeiture,' was held to be insufficient as a declaration of forfeiture.
"Under this lease the default established the right to re-enter, and the determination of the lease followed *330 the re-entry. But whether or not a declaration of intent to re-enter was necessary, the right to re-enter might be waived or deferred by any act extending the time within which payment might be made. A notice to quit was given, but that notice was qualified by the assurance that no further proceedings would be taken without further notice."
This Court was of the opinion that negotiations between the parties had operated as extensions of time for the payment of obligations owing by defendant to the plaintiffs, and that, in consequence, the right to re-enter had been waived or deferred. Plaintiffs, in their suit in equity to quiet title, had not shown that the requisite steps had been taken to establish the forfeiture by the re-entry specifically provided for by the lease.
The above decision is in accord with the holding of the Court in Pickard v. Kleis, 56 Mich 604, 609, where it was said:
"We are not called upon to decide whether the contract claimed in this case to have been entered into created the relation of landlord and tenant. If it did, there was no right of re-entry reserved upon failure to perform the covenants or conditions of the contract, and no agreement that a failure to perform should operate as a forfeiture or termination of the lease. Breach of the covenants, express or implied, of the agreement claimed, did not terminate the relation of landlord and tenant between the parties, and consequently there was no holding over contrary to the terms of the lease or agreement. Langley v. Ross, 55 Mich 163. To entitle a party to this remedy on the ground that the other party is holding over, the complainant must, at the time of making the complaint, have the right to the possession of the premises, and the rights of the other party under the lease to longer retain possession must have terminated."
*331 In Hull v. Hostettler, 224 Mich 365, plaintiff sought a decree of specific performance of a contract for the exchange of real estate. Intervening defendants in the case relied on a nonassignment clause in the contract under which defendants had an equity as vendees in a land contract of property in the city of Detroit, involved in the exchange, and assigned to plaintiff. It was their claim that the assignment was void because of such provision of the contract and, hence, that plaintiff was not entitled to the relief sought. In rejecting the claim of the intervenors, it was said (p 369):
"But the Lambergs claim that they have a right to declare a forfeiture of the contract because of the breach of this covenant. If it could be said that for this reason they might have such a right, in any case, they have none in this, because the contract does not give it to them. It declares some causes of forfeiture, but does not include a violation of the nonassignability clause. None can be implied. In view of these facts, if the vendors have any remedy because of the assignment, it is an action for damages for breach of the covenant. They are not entitled to declare a forfeiture, and, if they were, this Court could not aid them. Equity dislikes forfeitures and not only will not aid in enforcing them, but will restrict their effect as far as possible. Crane v. Dwyer, 9 Mich 350 (80 Am Dec 87); Lozon v. McKay, 203 Mich 364; Hodges v. Buell, 134 Mich 162."
In McPheeters v. Birkholz, 232 Mich 370, plaintiff brought an action for damages, alleging a forcible eviction from leased premises. He recovered a judgment in circuit court which was affirmed on appeal to this Court. It was the claim of the defendants that plaintiff had breached the lease by absenting himself from the farm that was the subject matter of the agreement. This Court rejected the defense on the ground that, assuming that plaintiff had expressly *332 promised to give the business his personal attention and that his absence constituted a breach of the covenant, they thereby acquired no right to forfeit the lease and no right to re-enter. In accordance with the general rule recognized in other cases of like nature, it was said (pp 376, 377):
"The lease contains no condition that a breach by plaintiff of any or all of the covenants would give defendants the right to terminate the tenancy. The common method in drafting leases is to gather some or all of the covenants, by reference, into a condition subsequent, an agreement by the parties, that a breach by the tenant of any or all of the covenants on his part shall give the landlord the right to terminate the tenancy by means and in a manner usually indicated. The lease contains no such condition. The defendants here had no right to forfeit, or to reenter and repossess the premises, because of a breach of the covenant in question, whether express or implied. See Pickard v. Kleis, 56 Mich 604, where covenant and condition are distinguished. See, also, Hanaw v. Bailey, 83 Mich 24 (9 LRA 801); Somers v. Loose, 127 Mich 77; Wakefield v. Sunday Lake Mining Co., 85 Mich 605; Hough v. Brown, 104 Mich 109; 1 Underhill on Landlord and Tenant, p 620; 2 Tiffany on Landlord and Tenant, p 1366; 36 CJ p 598."
Attention has been directed by counsel to the reference in McPheeters to Wray-Austin Machinery Co., v. Flower, 140 Mich 452, in which it was suggested that an exception had been made by the Court in that case to the general rule as indicated in the decisions above cited. The facts in Wray-Austin Machinery Co. v. Flower were of such character as to differentiate the case from the case at bar. The lease there contained a provision that it should not be assigned without the written consent of the lessor, but contained no provision against subletting. The plaintiff in the case claimed under a sublease from the lessee under the instrument. It was held that there *333 was no privity of contract as between plaintiff and defendant, the owner and lessor of the premises involved. The sublessee sought relief on the ground that there was a wrongful conspiracy between the owner and the lessee, but this Court concluded that the claim was not supported by proof.
Some confusion has apparently resulted from the fact that the statement was made in the course of the opinion in the above case (p 460) to the effect that an assignment of the lease by the first lessee would have worked a forfeiture of the term. Cited in support of such statement were Randall v. Chubb, 46 Mich 311 (41 Am Rep 165), and Marvin v. Hartz, 130 Mich 26. In Randall the lease involved covered farm land which the lessee was to work and deliver a part of the crops to the lessor. Such a lease is ordinarily regarded as personal in nature, that is, as involving more than the mere right to the possession and use of the land. The lessor had an interest in the result of the labors of the lessee. A like situation existed in Lewis v. Sheldon, 103 Mich 102. In Marvin v. Hartz, supra, the lease contained an express provision that upon default of any of the covenants the lessor should have the right to re-enter and repossess the premises. In view of the situation and the authorities cited, we conclude that the statement referred to in the McPheeters opinion was a mere dictum and not in accord with decisions of the Court relating to the legal principle here involved.
In line with the cases above cited in support of the general rule is Hersey Gravel Co. v. Crescent Gravel Co., 261 Mich 488, in which the plaintiff filed a bill in equity to declare forfeited the lease of an easement. In affirming a decree in defendant's favor, the Court said, in part (p 491):
"There was no provision in the written lease that a breach of contract to pay rent would terminate the tenancy; no retention in the lease of the right to forfeit *334 it for nonpayment of rent, re-enter and repossess the premises for a breach of the covenant to pay rent. In the absence of such an agreement, plaintiff is not in a position to declare the contract forfeited. (Citing cases.)"
Counsel for appellees has cited in support of his contentions the case of White v. Huber Drug Co., 190 Mich 212. In that case the lessee, a corporation, under a lease of certain real estate in the city of Grand Rapids transferred all of its property to another corporation, the defendant. The lease contained a provision against assignment thereof and also against subletting without the written consent of the lessor. It was further provided that upon default in any of the covenants of the lease the lessor might re-enter and repossess the premises. The principal question before the Court was whether the transfer to defendant was a violation of the condition against assignment. It was held that it was, and the Court reversed the judgment rendered in circuit court in favor of the defendant. The provisions of the lease distinguish the case from the controversy now before us.
In the case of In re Pennewell (CCA 6), 119 F 139, there was involved the interpretation of a lease containing a provision against subletting the premises. There was no provision, however, with reference to forfeiture for breach of such stipulation, or giving the lessor the right to re-enter. The court recognized the general rule with reference to the construction of a provision of the nature in question to the effect that it will be construed as a covenant unless a condition or conditional limitation is expressed in clear and unequivocal terms. The court cited Michigan cases, some of which are discussed above, as in accord with the general rule. The court further pointed out that leases calling for personal duties to be performed by lessee, as in Randall v. Chubb, *335 supra, are not in conflict with the rule. See, also, People v. Klopstock, 24 Cal2d 897 (151 P2d 641).
The trial judge was correct in holding that Roosevelt Oil & Refining Corporation was not a reorganization of the original lessee. The record fully supports such finding. However, the lease was assigned after its automatic renewal on May 3, 1948, for a second 10-year period. Such assignment was not void. At the time it was dissolved the Roosevelt Oil Company had parted with its ownership of the lease. Under the circumstances it may not be said that it abandoned such lease, or that the action taken resulted in the ipso facto termination thereof. The conclusion necessarily follows that under the Michigan rule on the subject, as observed in the decisions above considered, the American Petroleum Company, Inc., acquired certain rights as sublessee, and the subsequent assignment to Leonard Refineries, Inc., which apparently recognized the continuing effect of the sublease, vested such assignee with an interest in the premises for which it is entitled to compensation in the condemnation proceeding.
The stipulation in the original lease that it should not be assigned without the written consent of the lessors was obviously a covenant rather than a condition. The fact that the parties did not incorporate in their written undertaking any provision in terms granting the right of re-entry in the event of an assignment, or attempted assignment, or for forfeiture of the lessee's interest in any other manner, is significant. Had it been intended to make the observance of the stipulation a condition subsequent on which the rights of the lessee should depend, it must be assumed, in view of prior decisions of this Court, that clear and unequivocal language declaring such intent would have been used. The trial court was in error in holding that the appellants *336 here were not entitled to share in the stipulated damages.
Upon the taking of the various steps prescribed by the statute pursuant to which the condemnation proceeding was instituted by the State highway commissioner, the title and right of possession passed to the State. The record before us indicates that the certificate of determination of necessity was filed February 11, 1958, and that the notice thereof was given at that time. Said notice further stated that tender had been made to all interested parties, residents of the county, of the respective amount specified in the determination of necessity, and that where such tender was refused, or the owner unknown or nonresident, the amount determined as damages to be paid had been deposited with the State treasurer to be paid to the person or persons entitled thereto upon execution of a proper release of premises, or otherwise subject to the order of the court. The statute (CL 1948, § 213.176 [Stat Ann 1958 Rev § 8.177]) provides in part that:
"Upon the filing of such determination and the giving of such notice, the title, and the right of possession to all of the property and property rights described in the determination shall vest in the county or State, as the case may be, for the purpose or purposes therein stated."
The interpretation of the language quoted was considered in In re State Highway Commissioner, 252 Mich 116, and in In the Matter of the Petition of Dillman, 276 Mich 252. In accordance with the express provisions of the condemnation act and the decisions of this Court construing it, title of the premises in question here passed to the State on February 11, 1958. See, also, Dohany v. Rogers, State Highway Commissioner of Michigan, 281 US 362 (50 S Ct 299, 74 L ed 904, 68 ALR 434). Appellees' *337 demand for the surrender of the premises and the service of the notice to quit were subsequent to the date stated.
Under the decisions above cited and others of like nature, we conclude that the right to compensation of each of the 3 parties to this appeal must be determined as of February 11, 1958, and that each of said parties had subsisting rights at that time that must be taken into account in determining the division of the stipulated damages. Said sum, in other words, must be apportioned among the 3 claimants on the basis of proof as to the fair amount of compensation due to each. Quite possibly the aggregate amount of damages sustained by the parties to the appeal, as of the date mentioned, may vary from said sum of $32,000 which the parties agreed should cover the aggregate loss. In that event the division must, of course, be made on a proportionate basis.
The proceeding is remanded to the circuit court with directions to set aside the order entered in favor of appellees and to take such further proofs as may be deemed expedient by the trial judge in the determination as to the amount of damages to be awarded to each of the 3 claimants. In view of the nature of the proceeding, no costs on this appeal are allowed.
KELLY, BLACK, EDWARDS, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.
DETHMERS, C.J., did not sit.