# JANUARY TERM, 1864, AT LANSING.

---

## George Richmond v. James H. Robinson and others.

*Land contract: specific performance: failure to pay by the day.* — A contract was made for the sale of lands, the payments to be made to a third person who held a mortgage given by the seller. Payment was not made by the day, and the seller declared the contract forfeited. The purchaser subsequently paid the money to the mortgagee, but without the seller's assent. It appearing that the land contract was designed to provide for the payment of the mortgage, it was held that, when that was done, as it did not concern the seller whether the mortgage was paid one way or another, the contract was to be regarded as substantially complied with.

*Failure to pay taxes.* — By the contract the purchaser agreed to pay all taxes. The bill did not aver that he had done so. Held that, the purchase price having been paid, the seller had no concern with the payment of taxes, as he could not be compelled to warrant against them, and he did not aver or pretend that he had been made personally liable for them.

*Time, when essential.* — Time cannot be made essential in a contract merely by so declaring, if it would be unconscionable to allow it. Parties may stipulate to make it so, where the stipulation is reasonable ; but, as in stipulated dama-ges, if the stipulation is not reasonable, courts will not regard it.

*Release of dower cannot be compelled.* — The wife cannot be compelled to release her dower in lands which her husband has contracted to sell ; and she is not a proper party to a bill by the purchaser for a specific performance.

*Heard November 6th, 1863. Decided January 8th.*

Appeal in Chancery from Ionia Circuit.

The bill was filed by Richmond, who was assignee of Rufus K. Barlow, against Robinson and his wife, and said Barlow, to compel the specific performance of the following contract, and a conveyance of the land therein described, by Robinson and wife to complainant.

"Articles of agreement made the thirteenth day of March, in the year of our Lord one thousand eight hun-dred and fifty-eight, between James H. Robinson of the

county of Ionia, and State of Michigan, party of the first part, and Rufus K. Barlow of the county of Ionia, and State of Michigan, party of the second part, witnesseth as follows:

"First. The said party of the first part, in consideration of the sum of one thousand dollars to be paid to the said party of the first part, and of the covenants to be performed by the said party of the second part as hereinafter expressed, hereby agrees to sell to the said party of the second part, all that certain piece or parcel of land known and described in the government survey as the east one-half of the south west fractional quarter of section twenty-six, township five north, of range seven west, containing eighty acres more or less, with the privileges and appurtenances thereunto belonging.

"Second. The said party of the second part, in consideration of the covenants herein contained, on behalf of the said party of the first part, agrees to purchase of the said party of the first part the above described land, and to pay for the same to the said party of the first part or his legal representatives or assigns, the said sum of one thousand dollars lawful money of the United States, in the manner following, that is to say; fifty-four dollars and seventy-three cents the first day of September, A. D. 1858, to James H. Robinson. Three hundred and seventy-one dollars and ninety-three cents to George R. Weeks of Seneca county, Ohio, or his assignee, the twenty-third day of September, eighteen hundred and fifty-eight; two hundred and eighty-six dollars and sixty-six cents to George R. Weeks or his assignee, the twenty-third day of September, A. D. 1859; two hundred and eighty-six dollars and sixty-six cents to George R. Weeks or his assignee the twenty-third day of September, eighteen hundred and sixty, with the interest to be computed from the date of these presents, at and after the rate of seven per centum per annum on the whole sum that shall be from time to

time unpaid and to be paid, both principal and interest annually to be paid.

"And also that he will, so long as any part of the principal or interest of the said consideration money remains unpaid, well and faithfully in due season, in each and every year, pay or cause to be paid all taxes and assessments, ordinary and extraordinary, that may for any purpose whatever be levied or assessed on said premises or on this contract, and that he will not commit or suffer any other person to commit any waste or damage to the said land or the appurtenances.

"Third. The said party of the first part further covenants and agrees with the said party of the second part, that upon the faithful performance by the said party of the second part of the covenants and agreements by him to be performed, and upon the payment of the several sums of money before mentioned, and the interest thereon, at the times and in the manner and at the place before mentioned, to the said party of the first part, in person or by attorney duly authorized, that thereupon the said party of the first part will well and faithfully execute and deliver a deed of warranty of the above described premises, with the appurtenances thereunto belonging.

"Fourth. It is further mutually covenanted and agreed by and between the said parties hereto, that the said Rufus K. Barlow may enter on the said land, and remain thereon and cultivate the same as long as he shall fulfil and perform all the agreements hereinbefore mentioned on his part to be fulfilled and performed, and no longer; and that if he shall hereafter at any time violate or neglect to fulfill any of said agreements, he shall forfeit all right or claim under this contract, and be liable to the said James H. Robinson for damages, and shall also be liable to be removed from the said land in the same manner as is provided by law for the removal of a tenant that holds over after the expiration of the time specified in his lease.

And it shall be lawful for the said party of the first part, at any time after the violation or non-fulfillment of any of said agreements on the part of the said party of the second part, to sell and convey the said land or any part thereof, to any other person whomsoever; and that the said party of the first part shall not be liable in any way, nor to any person, to refund any part of the money which he may have received on this contract, nor for any damages on account of such sale. And it is hereby expressly understood and declared that time is and shall be deemed and taken as of the very essence of this contract, and that unless the same shall in all respects be complied with by the said party of the second part, at the respective times and in the manner above limited and declared, that the said party of the second part shall lose and be debarred from all rights, remedies or actions, either in law or equity, upon or under this contract."

The pleadings and evidence in the case are sufficiently stated in the opinion of Justice MANNING. The Court below made decree for complainant as prayed.

*Blanchard & Bell*, and *C. I. Walker*, for complainant, to the point that time is of the essence of the contract when there is an express stipulation to that effect: — 11 *Paige*, 354. That when the general intention of the parties can be carried into effect the court relieves against any forfeiture: — *Ibid*. 358. That where a vendor has waived a forfeiture by receiving partial payments afterwards, he can not suddenly stop short and insist upon a forfeiture for non-payment of arrears, without any previous notice of his intention so to do: — 8 *Paige*, 423; 3 *Meriv.* 84; 1 *Johns Ch.* 379; and that when such notice is given, the vendee should have a reasonable time afterwards to pay the arrears: — 8 *Paige*, 607; 5 *Wis.* 206.

RICHMOND v. ROBINSON.

*A. Williams*, for the defendants Robinson and wife:

1. The bill nowhere alleges the payment of taxes, or the non‑commission of waste or damage; and, therefore, wholly fails to show some of the essentials of the complainant's right or title to what he claims by his bill.

2. By the terms of the contract, it was "expressly understood and declared that time is and shall be deemed and taken as of the very essence of this contract." And parties may contract on what terms they will, and may declare, if they think fit, that time shall be considered essential. Nor can courts any more dispense with punctuality as to time than with any other part of the agreement: *Adams Eq.* 88 *and note; Story Eq. Juris.* § 776 *and note* 1; 14 *Pet.* 172; 1 *Johns. Ch.* 378; 4 *Ves.* 686; 13 *Ves.* 225; 4 *Mich.* 570; 4 *Bro.* 469; 3 *Madd.* 440; *Sudg. on Vendors*, 286; 5 *Ves.* 520, *note; 7 Paige*, 22; 11 *Paige*, 352; 4 *Sandf. Ch.* 374; *Ibid.* 525.

3. The bill fully discloses a default on the part of the complainant, with respect to the payment due September 23, 1859. But it nowhere alleges a waiver, or even a request of waiver of such default; which waiver, if made, is a part of the complainant's case, to be stated in his bill; and, if not stated, the defect can not be cured by proof, or defendant's answer: — 6 *Mich.* 133; 7 *Mich.* 334; 8 *Mich.* 115; 11 *Mich.* 9.

4. The allegation of tender or surrender of said notes and mortgage — a part of the complainant's right or title to recover — is bad. The offer was to deliver them "up to the said James H. and Alma Robinson, on the execution and delivery by them to your orator, of a deed of the premises hereinbefore mentioned and described." But Mrs. Robinson was not a party to the contract, or in privity with it, and was in nowise liable upon it. She had a right of dower, and could not thus, without consideration, promise, or engagement on her part, be required to join

in such deed. No act of her husband, not assented to by her, could obligate her to do so: — 2 *Doug. Mich.* 141; 1 *Mich.* 1; 6 *Mich.* 470; 8 *Barb.* 618; 3 *Paige,* 483, 503.

The tender, or offer of surrender of said note and mortgage, was, therefore, destroyed by the incorporation of an element or condition not promised in the contract, but wholly foreign to it.

Weeks had no power to waive the forfeiture, or revoke the annulment of the contract. If Richmond paid, it was with his eyes open, and at his peril; if Weeks received payment, it was without authority, and in violation of Robinson's express and known directions: — 10 *Wend.* 88; 10 *Wend.* 156; 1 *Hill,* 145; 3 *Denio,* 321.

In no event is the complainant entitled to a decree against Mrs. Robinson, requiring her to join in a conveyance of the premises to the complainant: — 6 *Wend.* 9; 10 *Paige,* 342; and authorities cited under 4th point *supra.*

MANNING J.:

Bill for the specific performance of a contract for the sale of land. Robinson, being the owner of the real estate mentioned in the bill, on the 30th December, 1856, with his wife mortgaged the same to George R. Weeks, to secure the payment of three promissory notes, given by himself and wife to Weeks, on the 20th September, 1856, for $286.66 each, payable as follows: one on the 20th September, 1858, one on the 20th September, 1859, and one on the 20th September, 1860, with annual interest. On the 13th March, 1858, Robinson entered into articles of agreement with one Barlow, to sell and convey the mortgaged premises to Barlow, on Barlow's paying Robinson $54.73 on the 1st September, 1858, and paying to Weeks the three promissory notes secured by the aforesaid mortgage, with interest from the date of the aforesaid articles of agreement. On the 6th September, 1858, Barlow assigned

RICHMOND v. ROBINSON.

the contract to Richmond, who, on the 9th November following, paid the first note due to Weeks, and on the 15th day of the same month paid to Robinson the $54.73 going to him. On the 21st November, 1859, Richmond paid Weeks the further sum of $180. On the 12th April, 1860, Robinson served a written notice on Richmond of the forfeiture of the contract, and to quit the premises. Richmond afterwards, and in the same month, paid Robinson's mortgage and notes to Weeks, and tendered them to Robinson, and demanded a deed.

Several questions were made on the argument which I will now proceed to consider.

*First.* That the bill is defective in not alleging payment of taxes, and the non-commission of waste; and that no decree can therefore be entered upon it. By the articles of agreement, the vendee was to have possession of the land, and was to pay all taxes and assessments, and not to commit or suffer waste or damage to the land. And on the performance by him of the covenants and agreements to be performed by him, the vendor was to convey. The bill does not allege the payment of taxes, or the non-commission of waste. This is the ground of the objection. No allegation of the non-commission of waste was necessary, as it required no act to be done by the vendee, and the presumption of law in such cases is, that the party has not done the prohibited act. The payment of taxes stands on different ground, as it is an act to be done, and not one to be abstained from. It differs from the other acts to be done by the vendee, in that it s an undertaking to perform a public duty for the vendor. The duty must, however, exist before the obligation arises. The land may not have been assessed, and the existence of a tax is therefore not to be presumed. It must be shown by way of defense; and payment need not be averred in the bill.

The next objection is, that by the terms of the con-

tract, it was expressly understood and declared that time is and shall be deemed and taken as of the very essence of the contract. Time is always of the essence of a contract when an act is required to be done within a specified time; as much so as the act itself, and no more. Every part of a contract is of its essence. It is not very clear what courts and text writers who use this phrase mean, unless it be that a subsequent performance can not be decreed, under all the circumstances of the case, by a court of equity, by way of relieving against the forfeiture of the contract, without doing injustice to the party against whom the relief is asked. This is the principle equity acts on in relieving against forfeitures. Nor will it, by any stipulation of the parties, be ousted of its jurisdiction, or refuse to relieve against the exaction of the pound of flesh, although the parties have, in express terms, stipulated for it.

The first payment was not made within the time required by the contract, and no forfeiture was declared or insisted upon. In November following the forfeiture in September, both Robinson and Weeks were paid, Robinson receiving the money for Weeks as well as that which was going to himself. On the 21st November, 1859, $180 more were paid on the second payment to be made to Weeks — making the whole amount paid complainant $649.98. In April following, the notice of forfeiture, and for complainant to quit the premises, was given by Robinson. Thereafter, and during the same month, Richmond paid the balance due on the notes and mortgage to Weeks, the last note not being due until the following September. The object of the notice to quit from Robinson is too obvious not to be seen. It was to make $649.98 out of complainant. He had suffered no loss whatever, and Weeks, to whom the money was going, made no complaint. And after the notes and mortgage had been paid, the payment of which appears to have been

the object he had in view in selling the premises, he refused to convey. A stronger case could not well be presented for the interposition of a court of equity.

The third objection is, that Mrs. Robinson was not a party to the contract, and should not, therefore, be required to unite with her husband in the deed to complainant. This objection is well taken, and the bill must be dismissed as to her. But it is no answer to the refusal of Robinson to convey, when the notes and mortgage were offered to him and a deed demanded; for he did not place his refusal on the ground that his wife was required to unite with him in the conveyance. Had he done so, the execution of the deed by her might have been waived. His objection was, the forfeiture of the contract, and that complainant had no rights under it. Nor was Weeks a necessary party to the bill. The payment of the notes and mortgage by complainant discharged Robinson's indebtedness to Weeks, and he had no interest in having the mortgage discharged of record; and if he had, Weeks would be bound to acknowledge payment of it on request. The decree should require complainant to deliver up the notes and mortgage to Robinson, on receiving the deed from him.

The bill should be dismissed as to Mrs. Robinson, and the decree be so reformed as to Mr. Robinson as to require complainant to deliver the notes and mortgage to him, on receiving the deed from him. Neither party to have costs against the other.

CAMPBELL J.:

We think the contract in this case was designed (as appears from the circumstances and from its terms) to provide for the payment of the mortgage to Weeks. It could not in any way concern Robinson whether the mortgage was paid in one way or another. It only concerned him to get it satisfied; and, inasmuch as that has

been done, the contract has been substantially complied with. The objection that it does not appear the taxes have been paid, stands on the same footing with the one alleged, that the contract to pay the mortgage was not literally performed. When Richmond paid for the land, and became thus entitled to a conveyance, the non-payment of taxes could injure no one but himself; and Robinson could have no concern with it, as he could not be compelled to warrant against them, and does not aver or pretend that he has been made personally liable for them. Such covenants may doubtless become material, but not in such a case as the present.

Time cannot be made essential in a contract, merely by so declaring, if it would be unconscionable to allow it. Parties may stipulate to make it so, where the stipulation is reasonable; but, as in stipulated damages, if the stipulation is not reasonable, courts will not regard it.* For these reasons I concur in the results arrived at by my brother Manning. So far as Mrs. Robinson is concerned, no decree can be rendered against her, for the reasons he has stated, in which I agree with him.

MARTIN CH. J. and CHRISTIANCY J. concurred in this opinion.

* See *Jaquith v. Hudson,* 5 *Mich.* 123; *Davis v. Freeman,* 10 *Mich.* 188; *Daley v. Litchfield,* 10 *Mich.* 29.