## ROTHENBERG *v.* FOLLMAN

1. VENDOR AND PURCHASER—CONTRACTS—LAND CONTRACT—EQUITY OF REDEMPTION.

    The estate of a land contract purchaser does not include as one of its incidents an equity of redemption.

2. VENDOR AND PURCHASER—CONTRACTS—LAND CONTRACT—FORFEITURE.

    A land contract purchaser's rights may be declared forfeit by the seller without proceedings in court if notice of forfeiture is duly given and the purchaser is not in physical possession of the land or if possession can be recovered peaceably.

3. VENDOR AND PURCHASER—CONTRACTS—LAND CONTRACT.

    The purchaser in a land contract is not generally entitled to possession until he pays the full purchase price, unless the contract provides otherwise.

4. SPECIFIC PERFORMANCE—LAND CONTRACT—DEFAULT—FORFEITURE.

    A court of equity has the power to relieve a defaulting land contract purchaser from a forfeiture and to compel specific performance by the seller when in the court's judgment to do otherwise would result in an unreasonable forfeiture.

5. VENDOR AND PURCHASER—LAND CONTRACT—FORFEITURE—EQUITY.

    Unreasonableness of a particular land contract forfeiture depends upon a number of factors, among them the amount and length of the default, the amount of the forfeiture, the reason for the delay in payment and the speed with which equity's aid was sought.

REFERENCES FOR POINTS IN HEADNOTES

[1] 36 Am Jur, Mortgages § 202.
  55 Am Jur, Vendor and Purchaser § 356.
[2] 42 Am Jur, Property § 39.
  55 Am Jur, Vendor and Purchaser §§ 625, 635.
[3] 55 Am Jur, Vendor and Purchaser § 385 *et seq.*
[4, 8, 9] 55 Am Jur, Vendor and Purchaser § 642.
[5] 55 Am Jur, Vendor and Purchaser §§ 118, 513, 642.
[6, 7] 55 Am Jur, Vendor and Purchaser §§ 109, 114.
[10] 49 Am Jur, Specific Performance § 92.
[11] 5 Am Jur 2d, Appeal and Error § 836.

6. Cᴏɴᴛʀᴀᴄᴛs—Tɪᴍᴇ—Essᴇɴᴄᴇ—Uɴᴄᴏɴsᴄɪᴏɴᴀʙɪʟɪᴛʏ.

> Time cannot be made essential in a contract, merely by so declaring, if it would be unconscionable to allow it.

7. Cᴏɴᴛʀᴀᴄᴛs—Tɪᴍᴇ Essᴇɴᴄᴇ—Lɪǫᴜɪᴅᴀᴛᴇᴅ Dᴀᴍᴀɢᴇs—Uɴʀᴇᴀsᴏɴᴀʙʟᴇɴᴇss.

> A time essence clause in a land contract is unreasonable, where it and a forfeiture clause function as a liquidated damage clause which enlarges the damages payable to a seller as his actual possible damages decline.

8. Eǫᴜɪᴛʏ—Cᴏɴᴛʀᴀᴄᴛs.

> One of the reasons equity relieves from a forfeiture of a contract is that the damage to the promisee caused by a delay in performance can be compensated for by money.

9. Sᴘᴇᴄɪғɪᴄ Pᴇʀғᴏʀᴍᴀɴᴄᴇ—Lᴀɴᴅ Cᴏɴᴛʀᴀᴄᴛ—Rᴇʟɪᴇғ ғʀᴏᴍ Fᴏʀғᴇɪᴛᴜʀᴇ—Cᴏɴᴅɪᴛɪᴏɴᴀʟ Dᴇᴄʀᴇᴇ.

> Conditioning a decree relieving plaintiffs of a forfeiture and granting specific performance of a land contract upon the payment of damages to compensate the land contract sellers for the delay in payment and for costs and expenses incurred by them in asserting and protecting their rights is clearly within the power of an equity court.

10. Sᴘᴇᴄɪғɪᴄ Pᴇʀғᴏʀᴍᴀɴᴄᴇ—Lᴀɴᴅ Cᴏɴᴛʀᴀᴄᴛ.

> Specific performance of $40,000 land contract was properly adjudged where buyers failed to make a semi-annual payment of $1,500 plus $225 interest because of differences among themselves after $32,500 of principal had been paid on the contract, forfeiture of the contract occurred 5 months later, the buyers offered to pay the remaining balance of $7,500 plus interest and about 2 months after that buyers sought equity's aid in obtaining relief from the forfeiture less than 4 months after the forfeiture.

11. Aᴘᴘᴇᴀʟ ᴀɴᴅ Eʀʀᴏʀ—Dᴀᴍᴀɢᴇs—Rᴇᴍɪᴛᴛɪᴛᴜʀ.

> The Court of Appeals may reduce damages awarded to land contract vendor in an action by the purchaser for specific performance as compensation for delay in payment and for costs in asserting and protecting vendor's rights, where the award of such damages was proper but the amount was excessive.

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 April 9, 1969, at Lansing.

(Docket No. 4,572.) Decided October 2, 1969. Rehearing denied November 29, 1969. Leave to appeal denied March 17, 1970. See 383 Mich 770.

Complaint by Moses Rothenberg, Max Carmen, Sarah Carmen, and Ben Tkatch for specific performance of a land contract. Judgment for plaintiffs on the condition that plaintiffs pay defendants the balance of principal and interest owing under the contract and in addition $10,000 for costs, damages and expenses caused by plaintiffs' delay in payment. Defendants appeal. Plaintiffs cross-appeal. Affirmed in part, reversed in part and remanded.

*Maxwell I. Silverstein,* for plaintiffs.

*Emanuel J. Greenwald,* of New York, and *Joel M. Sturtz,* for defendants.

Before: J. H. GILLIS, P. J., and LEVIN and BRONSON, JJ.

LEVIN, J. The defendants appeal a judgment setting aside a forfeiture of a land contract and granting plaintiffs specific performance of the contract on the condition that plaintiffs pay the defendants the balance of principal and interest owing under the contract and in addition $10,000 for costs, damages and expenses caused the defendants by the plaintiffs' delay in payment. The plaintiffs cross-appeal the $10,000 award.

The land contract,[1] dated May 9, 1957, is for the sale and purchase of 7.42 acres of vacant land in

---

[1] The land contract contains the following provisions, among others:

"The purchaser shall have the right to possession of the premises from and after the date hereof, unless otherwise herein provided, and be entitled to retain possession thereof only so long as there is no

the city of Southfield, Michigan.  The purchase price was $40,000, of which $10,000 was paid down and the balance was payable in installments of $1,500 plus interest semi-annually on May 9 and November 9.

At the time the defendants acquired the seller's interest under the contract the plaintiffs, the owners of the purchaser's interest,[2] had paid $32,500 of principal and $9,319.76 as interest, and payment of taxes was current.  The principal balance was $7,500.  The $1,500 principal and $225 interest payment due May 9, 1965 was not paid.  Some of the owners of the purchaser's interest attempted to pay their shares of this installment payment, but the full payment was not timely made because, it seems, of differences among the owners of the purchaser's interest.

---

default on his part in carrying out the terms and conditions hereof. In the event the premises hereinabove described are vacant or un-improved, the purchaser shall be deemed to be in constructive possession only, which possessory right shall cease and terminate after service of a notice of forfeiture of this contract.  Erection of signs by purchaser on vacant or unimproved property shall not constitute actual possession by him.

"If the purchaser shall fail to perform this contract or any part thereof, the seller immediately after such default shall have the right to declare the same forfeited and void, and retain whatever may have been paid hereon, and all improvements that may have been made upon the premises, together with additions and accretions thereto and consider and treat the purchaser as his tenant holding over without permission and may take immediate possession of the premises, and the purchaser and each and every other occupant remove and put out. In all cases where a notice of forfeiture is relied upon by the seller to terminate rights hereunder, service of such notice shall be preceded by a notice of intent to forfeit the contract served at least ten days prior thereto.  *  *  *

"Time shall be deemed to be of the essence of this contract."

2 The original seller was Lucille Niebzdoski.  Plaintiff Moses Rothenberg and Dora L. Ribiat were the original purchasers.  On October 16, 1958, the original purchasers assigned one-sixth of the purchaser's interest to Max Carmen and Sarah Carmen, his wife, Ben Tkatch, Ben Lubarsky and Y. M. Loewy, each of the original purchasers retaining for himself a one-sixth interest.

Subsequent to the default in paying the installment due May 9, 1965, the defendants Hy A. Follman and Ruth Follman, his wife, on August 12, 1965, purchased the seller's interest.

On August 27, 1965, plaintiff Moses Rothenberg wrote the defendants' attorney stating that he had learned of the transfer of the seller's interest to the defendants and that he and plaintiffs Carmen and Tkatch were prepared to pay "our share, either in payments or in full, for the land." The defendants responded on August 31, 1965 by sending notices of intention to declare a forfeiture of the land contract giving the purchasers until September 27, 1965 to pay the overdue installment. The overdue installment was not paid and on October 1, 1965 notices of forfeiture were duly mailed to the purchasers.

One of the purchasers testified that he was under the impression that there was ample time in which to act, as he had been advised by an attorney at law that there is a right to redeem from a forfeiture.[3] Subsequently Rothenberg was advised by another attorney that there was a serious question whether there is a right to redeem and on December 10, 1965, that attorney wrote defendants' attorney advising that he was prepared to pay the contract balance in full. There were further communications between the attorneys but nothing came of them. This action was commenced on January 12, 1966.

The estate of a land contract purchaser does not (in contrast with a mortgage) include as one of its incidents an equity of redemption.[4] This means

---

[3] *Cf. Cornell* v. *Norton* (1915), 188 Mich 187, 194.

Under MCLA § 600.5673 (Stat Ann 1962 Rev § 27A.5673), there is a statutory right of redemption upon payment of the amount found due and costs where summary proceedings to recover possession are instituted in accordance with the statutory provisions referred to in footnote 5.

[4] There is, of course, no functional difference between a purchase money mortgage and a land contract. Both secure payment of unpaid purchase money; until it is fully paid the purchaser's rights are encumbered by a lien in favor of the unpaid seller. Yet for largely historical reasons the law of mortgages and land contracts has developed in separate compartments. While at one time the defaulting mortgagor appealed to equity's discretion to allow him to redeem,

that a land contract seller need not invoke a judicial or statutorily created remedy to foreclose the rights of the purchaser as must a mortgagee if he wishes to foreclose the mortgagor's equity of redemption. Typically, the seller will find it necessary to institute summary proceedings[5] or an action for ejectment or an equitable action to foreclose the purchaser's interest so that he can obtain peaceable possession.[6] But where the purchaser is not in physical possession of the land or possession can be recovered peaceably, as is frequently true where the property is vacant,[7] the purchaser's rights may be declared forfeited by the seller without proceedings in court if notice of forfeiture is duly given.[8]

Nevertheless, a court of equity has the power to relieve the defaulting purchaser from the forfeiture

---

the mortgagor's "right" of redemption became so well established that after a while defaulting mortgagors did not have to show any special equity to invoke equity's power and the shoe was on the other foot—it then became necessary for the mortgagee to foreclose the mortgagor's equity of redemption because, unless terminated by a court of equity (or, as now alternatively, under a statutory procedure for foreclosure) the mortgagor's equity continues indefinitely unabated. Turner, The Equity of Redemption (1931).

In contrast, the rights of the land contract purchaser have been largely shaped by contract principles. Specific performance and relief from a forfeiture are discretionary, the defaulting land contract purchaser (unlike a defaulting mortgagor) has no absolute right of redemption which the seller must foreclose. One way of viewing the matter is to visualize the present state of the law regarding specific performance and relief from forfeiture in favor of a defaulting land contract purchaser as equivalent to the state of the law preceding recognition of the equity of redemption as the mortgagor's undoubted right, when the court of equity relieved against the condition of the mortgage in some cases and not in others as a matter of discretion depending on the equities.

[5] See MCLA §§ 600.5634–600.5679 (Stat Ann 1962 Rev §§ 27A-.5634–27A.5679) (summary proceedings to recover possession of land).

[6] *Zaino* v. *North Woodward Construction Company* (1959), 355 Mich 425, 428.

[7] The general rule is that unless the land contract provides otherwise the purchaser is not entitled to possession until he pays the full purchase price. *Spaulding* v. *Wyckoff* (1948), 320 Mich 329, 335. See footnote 1 for provisions in the present contract regarding possession.

[8] *Nash* v. *State Land Office Board* (1952), 333 Mich 149, 155; *cf, Marsh* v. *Bristol* (1887), 65 Mich 378, 385.

and to compel specific performance by the seller
when in the court's judgment to do otherwise would
result in an unreasonable forfeiture.[9]   Whether a
particular forfeiture is unreasonable depends upon
a number of factors, among them the amount and
length of the default, the amount of the forfeiture
(*i.e.,* the sum of the amounts paid to the seller and
the value of the property at the time of forfeiture
less the contract price), the reason for the delay in
payment and the speed with which equity's aid was
sought.

In this case the delinquent installment was due
May 9, 1965; the amount in default was $1,500 prin-
cipal plus $225 interest; some of the owners of the
purchaser's interest attempted to pay their "shares"
of the delinquent installment.

The record is silent regarding the value of the
property in 1965; we take judicial notice of the fact
that the city of Southfield is one of the more pros-
perous and fastest growing suburbs of Detroit and
that it is, therefore, improbable that the property
declined in value after it was purchased for $40,000
in 1957.   At the time of forfeiture the principal
balance owing was $7,500.

The contract was forfeited on October 1, 1965.
In December, 2 months after the date of forfeiture
(7 months after the date the installment was due),
the purchasers offered to pay not only the delin-
quent installment but also the entire balance owing
on the contract.   The plaintiffs sought equity's aid
in obtaining relief from the forfeiture in January,

---

9 *Hubbell* v. *Ohler* (1921), 213 Mich 664; *Marble* v. *Butler* (1930), 249 Mich 276, 280; *Bilandzija* v. *Shilts* (1952), 334 Mich 421; *Cornell* v. *Norton, supra,* p 194.

*Cf. Stickney* v. *Parmenter* (1876), 35 Mich 237; *Piper* v. *Libiszewski* (1929), 247 Mich 381; *Grist* v. *Carlton* (1960), 360 Mich 237; *Hodges* v. *Buell* (1903), 134 Mich 162, 170; *Biddle* v. *Biddle* (1918), 202 Mich 160.

1966, less than 4 months after the forfeiture and less than 1 month after it appeared that a tender of the entire balance owing under the contract had been or would be rejected.

It is apparent that the delay in making the payment was relatively short, the amount in default was relatively small, the amount of the forfeiture was large both quantitatively and in relation to the balance owing and that the purchasers acted in good faith in offering to pay the entire balance owing. They might have acted more diligently, but the delay in offering to pay and in commencing this action does not, considering the other factors just mentioned, preclude granting relief. The trial judge did not err in deciding that the forfeiture which the sellers sought to retain for themselves was totally unreasonable and that he should exercise his equitable powers to relieve against it and to grant the purchasers specific performance of the contract.

Although the purchasers failed to make a formal tender before suit was commenced this is not necessarily fatal;[10] it is merely one of the factors to be considered in determining whether equitable relief will be granted. It is clear that in this case a tender would have been rejected.[11] The plaintiffs on April 25, 1966, deposited in court the balance of $7,500 and accrued interest owing under the contract.

---

[10] *Lozon* v. *McKay* (1918), 203 Mich 364, 367 (decree was not for specific performance because plaintiff had not yet tendered the purchase price and there was a question of his ability to do so, but the Court ordered forfeiture set aside on condition that plaintiff pay all arrearages within 60 days). See, also, *Morris* v. *Hoyt* (1862), 11 Mich 9, 18, stating that where an offer to perform is contained in the complaint the failure to make the offer before institution of suit "could only affect the question of costs." The plaintiffs in the present case offered in their complaint to pay whatever amount was found to be due by the court.

[11] See *Berrien County Fruit Exchange, Inc.,* v. *Pallas* (1946), 314 Mich 66, 73; *Hanesworth* v. *Hendrickson* (1948), 320 Mich 577, 578, 579; *Keller* v. *Paulos Land Company* (1966), 5 Mich App 246, 255.

The land contract in this case provided that time shall be of the essence. While there are judicial[12] and textual[18] statements that equity will not relieve against a forfeiture where the contract contains a time essence clause, this overstates the matter.

Just because the parties have declared that time shall be of the essence does not necessarily make it so. The parties cannot by use of labels convert an apple into an orange. It is the business of courts to look through form to substance.[14]

---

[12] See, *e.g.*, *Lozon* v. *McKay*, *supra*, p 366, but the statement in that case is mere dictum as the Court set aside the forfeiture. We found no Michigan case where the Court refused to consider granting relief or refused relief from a forfeiture of a land contract because it contained a time essence clause. In the recent Michigan case of *Bilandzija* v. *Shilts* (1952), 334 Mich 421, the Court set aside a forfeiture of a land contract although it contained a time essence clause; the opinion of the Court relied on the Court's earlier opinion in *Richmond* v. *Robinson* (1864), 12 Mich 193, quoted in the main text in a subsequent portion of this opinion. *Cf. Biddle* v. *Biddle*, *supra*. It would be extraordinary to countenance any other rule of law. No court will enforce a mortgagor's agreement to a clog on his equity of redemption to become effective upon the occurrence of a future default (*Batty* v. *Snook* [1858], 5 Mich 231, 239, 240; *Hazeltine* v. *Granger* [1880], 44 Mich 503, 505, 506); similarly, an agreement which seeks to eliminate equity's power to relieve against a forfeiture will not be enforced.

[13] See, *e.g.*, 27 Am Jur 2d, Equity, § 80, p 603.

[14] It is a familiar principle that merely because a document is labeled a deed or a bill of sale does not make it so if in reality it is a mortgage. *Emerson* v. *Atwater* (1859), 7 Mich 12, 22, 23; similarly, a purported lease may in reality evidence a conditional sale (*Unitype Co.* v. *Long* [CA 6, 1906], 143 F 315, 317); an instrument designated an option may be a contract, or *vice versa*. 25 Callaghan's Michigan Civil Jurisprudence, Vendors and Purchasers, § 7, p 7. Likewise, that which is called liquidated damages in a contract may be found by a court to be an unenforceable penalty. *Davis* v. *Freeman* (1862), 10 Mich 188, 191.

Based on our own professional experience as practicing lawyers, we take judicial notice of the fact that time is generally not regarded as of the essence in the ordinary land contract and that no greater diligence in payment is expected or in fact forthcoming depending on whether a printed form containing the time essence clause or one without it happens to have been used. Indeed, where the purchaser is in possession and he cannot be ousted peaceably except by the institution of summary or other judicial proceedings, the time essence clause cannot, as a legal and practical matter, be rigidly enforced; the purchaser in such a case cannot be deprived of an opportunity to reinstate or redeem. That is the typical case, yet the boiler plate language, "time is of the essence," continues to appear in many form

Furthermore, the fact that the parties have stipulated that time is of the essence is but one of the factors to be taken into consideration in determining whether equity will intervene to set aside a forfeiture. Where the forfeiture is disproportionately large and the other facts, circumstances and equities cry out for relief, a court of equity may, nevertheless, intervene.

"The next objection is, that by the terms of the contract, it was expressly understood and declared that time is and shall be deemed and taken as of the very essence of the contract. Time is always of the essence of a contract when an act is required to be done within a specified time; as much so as the act itself, and no more. Every part of a contract is of its essence. It is not very clear what courts and text-writers who use this phrase mean, unless it be that a subsequent performance can not be decreed, under all the circumstances of the case, by a court of equity, by way of relieving against the forfeiture of the contract, without doing injustice to the party against whom the relief is asked. This is the principle equity acts on in relieving

land contracts printed and supplied by local title companies (like the one used in the present case) which are daily signed in numerous transactions without differentiation as to whether the property will be physically occupied by the purchaser and, thus, without regard to whether the words have any practical or legal significance for the case at hand.

In that setting it is entirely understandable that the significance of "time essence" as a limitation on equity's power to relieve against a forfeiture and to decree specific performance is so little understood by laymen and many in the profession. We have no reason to believe that the original seller and purchasers in this case intended that in the event the contract was forfeited the purchasers would have no opportunity whatsoever to redeem, that the court of equity had thereby been ousted of all power in the matter.

If "time essence" is a euphemism for "and no court of equity shall have any power to relieve against such forfeiture" then, entirely apart from whether the parties can contract to oust the court of its equitable powers (clearly they cannot), the party who desires such an extraordinary stipulation should be required to put it in intelligible language so that laymen and lawyers who read may understand the significance of the stipulation,

against forfeitures. Nor will it, by any stipulation
of the parties, be ousted of its jurisdiction, or refuse
to relieve against the exaction of the pound of flesh,
although the parties have, in express terms, stip-
ulated for it.  (MANNING, J.)  *  *  *

"Time can not be made essential in a contract,
merely by so declaring, if it would be unconscion-
able to allow it.  Parties may stipulate to make it
so, where the stipulation is reasonable; but, as in
stipulated damages, if the stipulation is not reason-
able, courts will not regard it."  (CAMPBELL, J.,
opinion of the Court.)  *Richmond* v. *Robinson*
(1864), 12 Mich 193, 199, 200, 202.

A time essence clause, in the sense in which we
now consider it, does indeed function essentially as
a stipulation for the payment of liquidated damages
upon default.  In this case the time essence clause
coupled with the forfeiture clause purport to permit
the seller to retain whatever has been paid by the
purchaser plus the property which is the subject
matter of the contract because of the purchaser's
failure to pay on time an installment of the remain-
ing contract balance.  However, the amount of the
seller's potential damage (the unpaid purchase
price) is reduced by every payment the purchaser
makes; the amount of the forfeiture (the liquidated
damages) is increased by every payment the pur-
chaser makes in reduction of the seller's potential
injury.  A liquidated damage clause which enlarges
the damages payable to the promisee as his actual
possible damages decline ignores the principle of
reasonable compensation and manifestly does not
represent an honest attempt to estimate the prom-
isee's potential actual injury.[15]

---

[15] *Davis* v. *Freeman, supra; Decker* v. *Pierce* (1916), 191 Mich 64,
70, 71; *Federal Electric Co.* v. *National Service Stations* (1931), 255
Mich 425; *Daily* v. *Litchfield* (1862), 10 Mich 29, 37; *Biddle* v. *Biddle,
supra;* 5 Williston on Contracts, § 783, p 726; 5 Corbin on Contracts,

Accordingly, we find the time essence clause before us unreasonable (*Richmond* v. *Robinson, supra*) to the extent that it, together with the forfeiture clause, functions as a liquidated damage clause and is being relied upon to justify the forfeiture of the entire amount paid by the purchasers and the retention by the sellers of the property as well. The trial judge did not err in concluding that the time essence clause did not preclude him from granting equitable relief in this case. Whether time is truly of the essence, and the extent to which that should influence the judge in deciding whether to relieve against a particular forfeiture, depends upon the nature of the subject matter, the purpose and object of the contract and all other relevant facts and circumstances, not upon the skill of the draftsman.[16]

The purchasers' contention on their cross-appeal that a court of equity cannot condition specific performance on the payment of the seller's damages for delay is not well-founded. One of the reasons equity may decide to relieve from a forfeiture is that the damages for the delay in performance can be compensated for in money.[17] When the trial court conditioned its decree relieving the plaintiffs of the forfeiture and granting specific performance on the payment of $10,000 it was simply attempting to compensate the land contract sellers for the delay in payment and for the costs and expenses incurred

§ 1066, p 379; 1 Restatement, Contracts, § 339, p 552, and accompanying commentary.

[16] We do not mean to be understood as saying that time is never of the essence or that no forfeiture can withstand scrutiny by a court of equity. Time is generally of the essence in an option. *Olson* v. *Sash* (1922) 217 Mich 604. The "forfeiture" as liquidated damages of deposit money paid by a purchaser to a seller under a preliminary agreement will not be disturbed if the amount represents an honest attempt to estimate the seller's actual injury in the event of the purchaser's default. *Malone* v. *Levine* (1927), 240 Mich 222; *Wilkinson* v. *Lanterman* (1946), 314 Mich 568. Every case must be judged on its own facts.

[17] 27 Am Jur 2d, Equity, § 78, pp 601, 602.

by them in asserting and protecting their rights. This was clearly within the power of the court.[18] However, we think the amount allowed too generous and reduce it to $3,500.[19]

The judgment of the trial court relieving the purchasers of the forfeiture and decreeing specific performance is affirmed except that the amount required to be paid for costs, damages and expenses is reduced to $3,500. The case is remanded to the trial court for appropriate modification of its decree. No costs, neither party having prevailed in full.

All concurred.

---

[18] *Hubbell* v. *Ohler, supra,* pp 666, 667; *Letinsky* v. *Smith* (1922), 220 Mich 465, 467; *Stickney* v. *Parmenter, supra,* p 239; *Cornell* v. *Norton, supra,* p 195.

[19] We do not regard as relevant the amount of the premium alleged to have been paid by the defendants to the former owner of the seller's interest.