EMMONS v EASTER

1. Contracts—Interpretation—Enforcement.

An unambiguous contract generally is not subject to interpretation and must be enforced as written.

2. Appeal and Error—Findings of Fact—Court Rules.

Findings of fact made by a trial judge will not be overturned unless clearly erroneous (GCR 1963, 517.1).

3. Vendor and Purchaser—Land Contracts—Foreclosure—Court Proceedings—Notice—Recovery of Possession.

A land contract seller need not invoke a judicial or statutorily created remedy to foreclose the rights of the purchaser; the purchaser's rights may be declared forfeited by the seller without proceedings in court, if notice of forfeiture is duly given, where the purchaser is not in physical possession of the land or possession can be recovered peaceably.

4. Vendor and Purchaser—Land Contracts—Repossession—Foreclosure.

Repossession and foreclosure of realty by a land contract vendor

References for Points in Headnotes

[1] 17 Am Jur 2d, Contracts § 241.

[2] 5 Am Jur 2d, Appeal and Error § 841.

[3, 4, 6] 69 Am Jur 2d, Secured Transactions § 594.
   77 Am Jur 2d, Vendor and Purchaser § 406 *et seq.*

[3, 4, 6, 8, 10] Right of conditional seller to retake property without legal process. 146 ALR 1331.

[5] 77 Am Jur 2d, Vendor and Purchaser § 316 *et seq.*

[7] 17 Am Jur 2d, Contracts §§ 264–266, 298–300.

[8] 17 Am Jur 2d, Contracts § 18 *et seq.*

[8, 10] 17 Am Jur 2d, Contracts §§ 298–300.
   35 Am Jur 2d, Fixtures § 40.
   69 Am Jur 2d, Secured Transactions §§ 594, 600.

[9] 1 Am Jur 2d, Abandoned, Lost, and Unclaimed Property §§ 1, 5, 15–17.

[10, 11] 17 Am Jur 2d, Contracts § 18 *et seq.*
   69 Am Jur 2d, Secured Transactions § 583 *et seq.*

was properly executed where the purchaser had defaulted on and forfeited his interest to the realty under the terms of the contract, the purchaser was not in possession when the realty was repossessed, there was no breach of peace, and notice was given to the purchaser even though the contract contained an express waiver of any notice requirement.

5. VENDOR AND PURCHASER—EQUITY—LAND CONTRACTS—FORFEITURE —SPECIFIC PERFORMANCE.

A court of equity may, in the proper circumstances, relieve a land contract purchaser of a forfeiture of the realty and compel specific performance of the contract by the vendor.

6. STATUTES—REPOSSESSION OF CHATTELS—DUE PROCESS—STATE ACTION—COMMON-LAW REMEDY.

State action is not present in the repossession of chattels by a private party where the statute under which such repossession is accomplished merely permits the private use of a common-law remedy without further state interference (MCLA 440.9503).

7. CONTRACTS—SEPARATE AGREEMENTS—INTENTION OF PARTIES— CONSTRUCTION.

The intention of parties who have made two separate agreements is to be determined from the two writings construed together where one writing refers to the other.

8. VENDOR AND PURCHASER—SECURED TRANSACTIONS—TRADE FIXTURES—CHATTELS—IMPROVEMENTS TO REALTY—SEPARATE AGREEMENTS—INTENTION OF PARTIES.

Trade fixtures and chattels involved in the sale of a retail store cannot be catagorized as improvements to the realty, under a security provision in a land contract, where the parties to the sale made separate agreements pertaining to the realty and the trade fixtures and chattels and the parties never intended the trade fixtures and chattels to be considered improvements of, attachments to or inseparable from the realty controlled by the land contract.

9. ABANDONMENT—INTENT TO RELINQUISH—NONUSER.

Abandonment of property is composed of two elements; an intention to relinquish the property and an external act putting that intention into effect; nonuser, by itself, is not sufficient to show abandonment, but must be accompanied by some act which shows the intent to relinquish the property.

10. Secured Transactions—Vendor and Purchaser—Repossession
    of Property—Personal Property—Disposal of Property—
    Value of Property—Abandonment.

   Disposal of a vendee's equipment, inventory and personal posses-
   sions by the vendor, upon repossession of realty and chattels
   which were the subjects of purchase agreements, was improper
   where the property was not included in a security agreement
   which covered trade fixtures and chattels, the property could
   not be classified as improvements to the realty, the property
   was not worthless, and the facts do not support a finding that
   the vendee intended to abandon the property.

11. Secured Transactions—Repossession—Resale—Proceeds—Sur-
    plus—Statutes.

   A secured party, after repossession and resale of property covered
   by a security agreement, must account to the debtor for any
   proceeds over the amount of the indebtedness, subject to cer-
   tain statutorily allowed expenses (MCLA 440.9504).

Appeal from Cheboygan, Joseph P. Swallow, J.
Submitted Division 3 May 6, 1975, at Grand Rap-
ids. (Docket No. 19481.) Decided June 23, 1975.

Complaint by Kenneth G. Emmons against Ed-
ward Easter, Antoinette Easter, Eldene Thompson
and Marilyn Thompson challenging the foreclo-
sure and resale of real and personal property.
Judgment for defendants. Plaintiff appeals. Af-
firmed in part, reversed in part, and remanded.

*Hile & Livo,* for plaintiff.

*Peter Patrick, P. C.,* for defendants.

Before: R. B. Burns, P. J., and Bashara and
M. J. Kelly, JJ.

R. B. Burns, P. J. In May, 1968, plaintiff and his
wife purchased a retail store and adjoining dwell-
ing under a land contract from the defendants,
Edward and Antoinette Easter (the Easters), for

$30,250. In addition, the Easters sold them the store's inventory for $2,106.33 by a separate bill of sale. The fixtures, furnishings, and equipment used in connection with the business were sold under still another bill of sale for $10,000. This latter sale was governed by a security agreement for $7,500 in favor of the Easters. Both the land contract and security agreement contained clauses which stated that a default under the terms of one agreement constituted a default under the other. Plaintiff and his wife were divorced during the course of this controversy, and her interest in it was conveyed to him as part of their property settlement. Consequently, this case will be discussed as though she was never involved in it.

Plaintiff performed the payment obligations under the agreements until September, 1969, when he was unable to make a special $1,000 payment required by the contract. The Easters gave him a 60-day extension to pay it. Plaintiff failed to do so. Plaintiff subsequently missed land contract payments in October and December of that year; the last payment made was in January, 1970.

On January 20, 1970, the Easters went to the premises to investigate a report that its furnace had blown up. They discovered the store's back door open. The plaintiff was not present and he had apparently been absent for a long time. As a result, the Easters chose to immediately repossess all the property present by relying on the self-help terms of the land contract and the security agreement on the trade chattels. At the time of the repossession, plaintiff had paid $4,875 toward purchase of the trade chattels and $7,875 for the land and buildings. Once the Easters had repossessed the property, they attempted to serve a notice of foreclosure upon plaintiff. Notices were sent to plaintiff's known former address and to another

address listed for plaintiff in the land contract. The Easters' attorney also informed plaintiff's real estate agent (who had been instructed not to disclose plaintiff's whereabouts to anyone) of the Easters' determination to foreclose. Later, the attorney had a notice of forfeiture published in the local newspaper. None of these tactics provoked an immediate response from plaintiff.

On February 20, 1970, the Easters wrote plaintiff, via his realtor, that defendants, Eldene and Marilyn Thompson (the Thompsons), wished to purchase the store, the adjoining buildings, and the trade chattels. Plaintiff was also informed that the Thompsons were willing to purchase plaintiff's liquor license. Again, plaintiff did not respond. The Easters sold the property to the Thompsons on March 18, 1970. The terms of the sale consisted of $30,000 for the realty on land contract and $10,000 for the furniture, fixtures, and equipment located at the store pursuant to a security agreement. The Thompsons did not pay any money for the inventory and other personal property plaintiff had left in the store or adjoining home at the time of repossession. The defendants never inventoried the property found in the buildings. The Thompsons sold what they could of the plaintiff's personal property; they gave a portion of the remainder to neighbors; and they disposed of what was left over by taking it to the local dump. Plaintiff was not given any of the proceeds from the sale of his property nor any of the property itself.

On July 7, 1970, less than six months after the Easters had foreclosed on all the property, plaintiff brought suit against defendants challenging the foreclosure, resale, and disposal of all property involved in the aforementioned transactions. The trial judge ruled against him on all points, and he appeals.

Plaintiff contends that the trial judge committed reversible error by finding that plaintiff had forfeited his interest in the realty by default on his land contract and that repossession was properly accomplished. The land contract plaintiff signed contained provisions stating that time was of the essence and that, in case of default, defendant could *sua sponte* declare the contract void and plaintiff's interests in the realty forfeited without providing any notice to plaintiff. The general rule with respect to the interpretation and construction of contracts is that, if unambiguous, they are not subject to interpretation and must be enforced as written. *Britton v John Hancock Mutual Life Ins Co,* 30 Mich App 566; 186 NW2d 781 (1971), *Barner v City of Lansing,* 27 Mich App 669; 183 NW2d 877 (1970). At the time of repossession and foreclosure, plaintiff had failed to make three payments; one of those payments was overdue even with a 60-day extension for payment. Plaintiff still owed the Easters $27,000. At the time of repossession, the Easters found the store's back door open and most of plaintiff's personal property was missing. Plaintiff, himself, was not present and could not be located. Considering the contract's terms, the missed payments, the amount still unpaid, and the plaintiff's absence, we believe the trial judge reasonably found that plaintiff had defaulted on and forfeited his interest in the realty and trade chattels under the terms of the contracts. Since the findings of fact made by a trial judge will not be overturned unless clearly erroneous, *Roberts v Duddles,* 47 Mich App 601; 209 NW2d 720 (1973), GCR 1963, 517.1, we must affirm on this point.

Nonetheless, by relying on the then applicable statute, MCLA 600.5634; MSA 27A.5634, plaintiff contends that the Easters were required to fore-

close by judicial action despite the clear provision to the contrary in the land contract. But, that statute did not purport to abrogate the common-law right of self-help repossession if it could be accomplished without breaching the peace pursuant to a land contract. For land contracts, the rule is best stated in *Rothenberg v Follman,* 19 Mich App 383, 387–388; 172 NW2d 845, 847–848 (1969):

"The estate of a land contract purchaser does not (in contrast with a mortgage) include as one of its incidents an equity of redemption. This means that a land contract seller need not invoke a judicial or statutorily created remedy to foreclose the rights of the purchaser as must a mortgagee if he wishes to foreclose the mortgagor's equity of redemption. * * * But where the purchaser is not in physical possession of the land or possession can be recovered peaceably * * * the purchaser's rights may be declared forfeited by the seller without proceedings in court if notice of forfeiture is duly given."

Clearly, plaintiff was not in physical possession when the realty was repossessed and his rights were declared forfeited. There was no breach of the peace here. As for notice, this case can be distinguished from *Rothenberg, supra,* in that the contract, in the present case, contained an express waiver of any notice requirement. Furthermore, notice of forfeiture need not always precede repossession to be properly given. *Nash v State Land Office Board,* 333 Mich 149; 52 NW2d 639 (1952). More importantly, the trial judge held that plaintiff had received actual notice of foreclosure. His holding was based on the facts that the Easters used all available means to contact plaintiff regarding their intentions to foreclose, that they were evidently successful since plaintiff produced an original notice of forfeiture at trial, and that

plaintiff deliberately remained incommunicado while failing to make any further payments under the land contract. We must agree with the trial judge that notice was duly given even if the Easters were not contractually bound to give it. The repossession and foreclosure on the realty was properly executed.

Of course, as plaintiff insists, a court of equity may, nonetheless, relieve plaintiff of the forfeiture and compel specific performance from the Easters. *Rothenberg, supra, Hubbell v Ohler,* 213 Mich 664; 181 NW 981 (1921). We do not believe such equity power could be appropriately exercised here. Plaintiff is delinquent on many payments and there is a balance of more than $27,000 on the contract. Significantly, plaintiff admits that he does not intend to resume operating the store on the premises; he does not claim to be able to tender payment immediately for all amounts due. Instead, he claims that if the realty is returned to him he can resell it at a better price than the Easters received. According to the land contract, even such a resale cannot take place without prior consent by the Easters. Under the circumstances, it is far more equitable to allow the Easters to make their own resale arrangements. *Nelson v Hacker,* 278 Mich 383; 270 NW 720 (1936).

Plaintiff also contends that MCLA 440.9503; MSA 19.9503 (the statute that permits self-help repossession of chattels) is violative of his Federal due process rights. *Sniadach v Family Finance Corp of Bay View,* 395 US 337; 89 S Ct 1820; 23 L Ed 2d 349 (1969), *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972), *Watson v Branch County Bank,* 380 F Supp 945 (WD Mich, 1974). To prove his claim, it is essential for plaintiff to show state action was involved in the repossession of his

chattels. Yet, plaintiff has failed to advance any theory disclosing the presence of state action here. Such an involvement will not be presumed to exist where, as here, the statute in question merely permits the private use of a common-law remedy without further state interference. *Hill v Michigan National Bank of Detroit,* 58 Mich App 430; 228 NW2d 407 (1975), *Turner v Impala Motors,* 503 F2d 607 (CA 6, 1974), *Adams v Southern California First National Bank,* 492 F2d 324 (CA 9, 1973), *Bond v Dentzer,* 494 F2d 302 (CA 2, 1974), *Bichel Optical Labs, Inc v Marquette National Bank of Minneapolis,* 487 F2d 906 (CA 8, 1973), and *James v Pinnix,* 495 F2d 206 (CA 5, 1974).

Plaintiff next contends that he was improperly denied possession of, or compensation for, the chattels he had at the premises at the time of repossession. The land contract contained a provision which provided that improvements to the realty subsequently made by the plaintiff were part of the security for the entire contract. The trial judge held that insofar as the items that were at the premises when defendant repossessed the property became affixed to the realty in such a manner as to constitute improvements, they were considered forfeited by plaintiff along with the remainder of the security for the land contract. And we agree.

However, the chattel security agreement (which secured all fixtures, furnishings, and equipment used in connection with the business) did not contain an after-acquired property clause. Where, as here, one writing refers to another, the intention of the parties is to be determined from the two writings construed together. *Allied Steel & Conveyers, Inc v Ford Motor Co,* 277 F2d 907 (CA 6, 1960), *Whittlesey v Herbrand Co,* 217 Mich 625;

187 NW 279 (1922). The fact the contracting parties made two separate agreements pertaining to the realty, on the one hand, and all trade fixtures and chattels, on the other, indicates that they intended both categories to be treated differently. In other words, the trade fixtures and chattels were never to be considered improvements of, attachments to, or inseparable from the realty controlled by the land contract. This distinction was maintained with regard to the Easters' property in the original contracts, and there is no evidence on the record indicating that this distinction was not to be applied to whatever property plaintiff might bring to the premises after his agreement with the Easters was finalized. But the trial judge failed to maintain this distinction. As a result, trade fixtures and other personalty could be improperly classified as improvements to the realty.

The trial judge held that the plaintiff's property remaining on the premises at the time of repossession and foreclosure was affixed to the realty as an improvement, or was abandoned by the plaintiff, or was valueless. This holding made it obviously unnecessary for the trial judge to make any findings of fact establishing the exact identity of all the items involved here.

Furthermore, both the Easters and the Thompsons admit they did not make an inventory of plaintiff's property. There is evidence showing plaintiff purchased a scale, a freezer, a display case, some shelving, and other things for the store. Some of these were apparently repossessed by other creditors. It is sufficient to state that the record indicates that plaintiff did have property at the store that could have been improperly classified as an improvement to the realty.

Having stated that the trade fixtures and chattels could not be categorized as improvements pursuant to the land contract, the Court must determine whether those items, as well as the other items plaintiff had on the premises at the time of repossession, could reasonably be found to be either valueless or abandoned. This property includes plaintiff's trade fixtures and chattels, his store's inventory of goods for sale, and his other personal possessions found in the store and elsewhere. All of this property was not within the purview of either the land contract or the security agreement.

Was all of this property worthless? Once again, the absence of specific findings on this matter prevents a more detailed examination. Nonetheless, the property can be broadly categorized. Some items were repossessed by other creditors who are not involved here, while others, like spoiled foods, were clearly worthless. But some items, like plaintiff's children's toys, were not worthless but merely useless to either the Thompsons or the Easters. Such things were either given away to neighbors and friends of the defendants or taken to the local dump. Plaintiff had some things, like the store's scales, which the defendants found useful and have kept for their own use. Still other items were sold for a profit of over $500, although this is not to say they were sold at their fair market value. Needless to say, plaintiff did not receive any portion of the proceeds of the sales nor any compensation for the disposal of his property by other means. Of course, the findings of fact of a trial judge will not be set aside unless they are clearly erroneous. *Ford v Howard,* 59 Mich App 548; 229 NW2d 841 (1975), GCR 1963, 517.1. However, the uncontested facts that some of the property was

worth using for gifts, or as business equipment, or for personal use, or for sale at a 100% profit are irreconcilably inconsistent with the trial judge's findings. Therefore, we believe we must hold that plaintiff's property was valuable.

Did the plaintiff abandon the property? Abandonment is composed of two elements, an intention to relinquish the property and an external act putting that intention into effect. *Hough v Brown,* 104 Mich 109; 62 NW 143 (1895), *Detroit International Bridge Co v American Seed Co,* 249 Mich 289; 228 NW 791 (1930). Nonuser, by itself, is insufficient to show abandonment. *Hustina v Grand Trunk Western R Co,* 303 Mich 581; 6 NW2d 902 (1942), *Goodman v Brenner,* 219 Mich 55; 188 NW 377 (1922). Nonuser must be accompanied by some act that shows the intent to relinquish the property. *Kraft v Miller,* 314 Mich 390; 22 NW2d 857 (1946), *McMorran Milling Co v Peré Marquette R Co,* 210 Mich 381; 178 NW 274 (1920). The record, in this case, does not support a finding that plaintiff intended to abandon his possessions. Certainly, plaintiff was absent from the store when the Easters foreclosed. But the business was seasonal, and the Easters repossessed during the off-season. Plaintiff, in fact, was in the Detroit area enmeshed in divorce proceedings. Thus, plaintiff's absence, at that time, was not so unusual that it compelled an inference of abandonment. The fact that plaintiff left valuables behind actually implies the opposite conclusion, i.e. that he intended to return. Plaintiff was not responsible for the open door which led to the Easter's reentry and repossession; that was apparently accomplished by trespassers. There was some furnace trouble, but that appears to have occurred without plaintiff's fault or knowledge. Undeniably, plaintiff was behind on

his payments, but this, at its best, would imply an intent to abandon the contracts, not plaintiff's personal possessions. Furthermore, the Easters were fully aware that plaintiff had a local agent who was given access to the premises and the power to sell plaintiff's interest in it at a profit to him and the Easters. This delegation of authority was clearly within the express rights given plaintiff by the land contract which gave him the power to sell his interest and an exercise of proprietary control over the premises. The Easters repossessed before plaintiff was informed of the foreclosure; the locks to the premises were changed. Consequently, plaintiff's ability to retrieve his property was significantly hindered. Plaintiff was never informed of any intention to dispose of his personal property or to convey it to the Thompsons. Within four months of that conveyance, plaintiff was asserting his possessory rights in court. The delays that necessarily accompany the use of a judicial rather than a self-help remedy to regain property do not indicate any disinterest in the property. The mere fact that plaintiff, himself, was unavailable to the Easters does not indicate an intention to abandon his personalty since he was under no obligation to remain available and since he did have a local agent who was available. The defendants had ample justification for foreclosure, but they have failed to advance any satisfactory explanation for their wholesale conversion and disposal of plaintiff's personal property.

Only one issue remains. After foreclosure on the chattels controlled by the security agreement, the Easters resold the same property to the Thompsons for $10,000. That amount equals the purchase price given plaintiff, and exceeds the amount of plaintiff's indebtedness by several thousands of

dollars. The Easters have not attempted to confine their claim to the proceeds from the resale to the amount of plaintiff's indebtedness. The law is well settled that the secured party must account to the debtor for any surplus over the amount of the indebtedness. MCLA 440.9504(2); MSA 19.9504(2). The secured party may apply the excess to satisfy certain additional expenses, MCLA 440.9504(1); MSA 19.9504(1), but the record, in this case, is barren of evidence exactly indicating what expenses the Easters incurred by repossession and sale. Plaintiff has not been given the surplusage which is rightfully his.

In summary, this case must be affirmed in part and reversed and remanded for further proceedings in accord with the principles elucidated here.

First, we hold that the foreclosure upon the realty and secured trade chattels was properly executed, and we affirm the trial judge on this point.

Second, this cause must be reversed and remanded for further proceedings concerning the conversion and disposal of plaintiff's personal property. Defendants must account for all of the plaintiff's property that they came to possess through foreclosure. Plaintiff is entitled to possess it. He is entitled to just compensation for its use by defendants, for whatever damage it suffered while in defendants' possession, and for its loss caused by defendants' actions. He is also entitled to the proceeds from the sale of his property.

Third, this case must be reversed and remanded regarding the proceeds from the resale of the secured trade chattels over the amount of plaintiff's indebtedness and the expenses of sale.

No costs, neither party prevailing in full.